WILSON  STREAM  DAM  COMPANY  *vs*.  BOSTON  EXCELSIOR  COMPANY. .

Piscataquis.    Opinion March 5, 1909.

*Statutes. Construction. "And" Construed as "Or." Tolls. Stream Improvements.*
*Evidence.  Private and Special Laws, 1899, chapter 64, sections 2, 3;*
*1905, chapter 205.*

The plaintiff brought an action against the defendant to recover toll on logs driven in 1906 down Wilson Stream, which flows into Sebec Lake, based on a provision in its charter which authorized the plaintiff to "demand and receive a toll for the passage of logs driven over their dams and improvements." In 1900, the plaintiff built a dam in Wilson Stream eighteen or twenty miles from the outlet of the stream into Sebec Lake. The logs upon which the plaintiff claimed a toll were driven out of Davis Stream, a tributary which flows into Wilson Stream about two miles above Sebec Lake. Two years later the plaintiff built another dam at Rum Pond. No dam was built by the plaintiff on Wilson Stream below Davis Stream where the logs were landed.

*Held:*  1.  That the word "and" in the clause in plaintiff's charter reading "driven over their said dams and improvements" may be construed as a convertible term used in the sense of "or" so as to authorize the collection of toll not only on logs that pass over the dams but also on those that actually pass over that part of Wilson Stream on which improvements to facilitate driving have actually been made.

2.  That in order for the plaintiff to maintain its action, however, it was not sufficient to show that the defendant was enabled to take advantage of a greater flow of water afforded from time to time by the plaintiff's control of the dams eighteen miles above.

3.  That the evidence did not satisfactorily show that the plaintiff had made any improvements in that part of Wilson Stream below Davis Stream except such as are ordinarily and incidently made in clearing out the stream each year to facilitate the annual drive.

4.  That a nonsuit must be ordered.

In a charter containing the clause "driven over their said dams and improvments" the word "and" construed as used in the sense of "or."

On report.    Plaintiff nonsuit.

Assumpsit on account annexed to recover toll on 819,000 feet of pulp wood driven down Wilson Stream, Piscataquis County, in the

spring of 1906, at 15 cents per thousand feet. The plaintiff claimed to recover under and by virtue of the provisions of sections 2 and 3 of its charter, Private and Special Laws, 1899, chapter 64, and chapter 205, Private and Special Laws, 1905, amendatory of section 3. Plea, the general issue. When the plaintiff had concluded its testimony at the trial of the action, it was agreed to report the case to the Law Court, for decision, with the stipulations that "if the Law Court find that the action is maintainable, judgment to be entered for the amount claimed in the writ with interest. If action is not maintainable nonsuit to be entered."

The case is stated in the opinion.

*Hudson & Hudson,* for plaintiff.

*W. A. Johnson,* for defendant.

SITTING: EMERY, C. J., WHITEHOUSE, CORNISH, SPEAR, KING, BIRD, JJ.

WHITEHOUSE, J. In this action of assumpsit the plaintiff company seeks to recover toll on 1638 3-8 cords of poplar making 819,000 feet of pulp wood, driven down Wilson Stream in the spring of 1906, at fifteen cents per thousand.

Section 2 of the Act of 1899 incorporating the plaintiff company, contains the following provisions, viz: "Said corporation may erect and maintain a dam or dams, with side booms and sluices, on Wilson Stream, flowing into Sebec Lake in Piscataquis County, to facilitate the driving of logs and lumber down said stream; and said corporation may remove rocks, excavate ledges, build dams and side dams, and make other improvements for said purpose, except that it shall not blast out or excavate at Lower Greely falls, but shall have the right to smooth up and deepen the channels at the upper Greeley falls, and make such improvements at said falls as may be necessary to facilitate the driving of logs as aforesaid."

Section three of the Act provides as follows: "The said corporation may demand and receive a toll for the passage of logs cut and hauled above the present south line of the town of Greenville and driven over their said dams and improvements, of twenty-five cents

for each thousand feet, board measure, woods scale, and fifteen cents for each thousand feet as aforesaid, of pulp wood and logs intended for pulp wood.".

In pursuance of its charter the plaintiff company erected a dam in 1900 in Wilson Stream, at lower Wilson Pond, eighteen or twenty miles from the outlet of the stream into Sebec Lake, and two and a half miles north of the Greenville line. Two years later the plaintiff built another dam at Rum Pond.

It has been seen that by the terms of the original charter the plaintiff company was only authorized to "demand and receive a toll for the passage of logs cut and hauled above the present south line of the town of Greenville and driven over their said dams and improvements;" but by an amendment obtained in 1905, this limitation to "such logs as were cut north of the south line of Greenville" was removed, and the company was authorized to "demand and receive a toll for the passage of logs driven over their said dams and improvements."

It appears that the logs upon which the plaintiff claims a toll in this case were driven out of Davis Stream, a tributary which flows into Wilson Stream about two miles above Sebec Lake.

It appears that no dam was built by the plaintiff company on Wilson Stream below Davis Stream where the logs in question were landed. And among other defenses the defendant company contends that no such "improvements" as were contemplated by the plaintiff's charter as the basis of its right to collect toll on logs passing over them, were ever made by the plaintiff company on that part of Wilson Stream between Davis Stream and Sebec Lake, over which the defendant's logs were driven. The defendant therefore confidently claims that on this ground alone the plaintiff is not entitled to recover toll on logs driven down Wilson Stream from Davis Stream to the lake.

On the other hand it is contended in behalf of the plaintiff in the first place that the greater facilities afforded for driving logs by reason of the head of water raised by the dams eighteen miles above are sufficient to entitle the plaintiff to recover its toll, and that it

was not required to show that the logs were driven immediately over that part of Wilson Stream on which the work of improvement was actually done by the plaintiff.

But it has been noticed that the terms of the charter only authorize the plaintiff to collect toll on logs that are "driven over their said dams *and* improvements." The word "and" may here be construed as a convertible term and used in the sense of "or" so as to authorize the collection of toll not only on logs that pass over the dams but also on those that actually pass over that part of Wilson Stream on which improvements to facilitate driving have actually been made. It is not sufficient, however, to show that the defendant was enabled to take advantage of a greater flow of water afforded from time to time by the plaintiff's control of the dams eighteen miles above. By the express and unambiguous terms of the charter, the plaintiff is entitled to collect toll on logs that are actually driven over the "dams" or over other "improvements" made by the plaintiff company. Again there is no evidence in this case that the dams erected by the plaintiff, or either of them, or the heads of water stored by them were used at all to facilitate the driving of logs in the spring of 1906, or that the defendant received any aid whatever, in driving the logs from any improvements in the condition of the water arising from the plaintiff's dams eighteen miles above. For aught that appears the flow of water in Wilson Stream at the time the defendant's logs came down, was in its natural state in no degree increased by the plaintiff's dams.

But the defendant confidently relies upon its contention that no permanent or substantial "improvements" were ever made by the plaintiff company below Davis Stream, and that in the spring of 1906 its logs were not "driven over any improvements" that entitled the plaintiff to collect toll on them.

The exhibit introduced as evidence entitled "Expenditures of building Wilson pond dam and clearing out stream" comprises items from 1899 to March 31, 1906, but discloses nothing done between Davis Stream and Sebec Lake. The plaintiff was therefore compelled to rely upon the testimony of George Butterfield who had charge of the work of building dams and clearing out the

stream, to prove that in Wilson Stream below Davis Stream the plaintiff had made substantial "improvements" over which the defendant's logs were driven.

But the testimony of Butterfield is so uncertain, indefinite and self-contradictory that it does not satisfactorily show that expenditures to the amount of ten dollars had actually been made by the plaintiff company for "improvements" in Wilson Stream below Davis Stream during all of the years above named.

It is true that in his direct examination Butterfield testifies that the plaintiff company did some work between Davis Stream and Sebec Lake; that some blasting was done on Greeley Falls and that $300 or $400 was expended on the back channel. But it inferentially appears that this back channel was used as a sorting channel for the accommodation of some of the principal shareholders in the corporation, and there is no evidence in the case that the defendant's logs were ever driven through or over this sorting channel. These logs appear to have been one lot and one mark and all for the same destination and the defendant had no use for a sorting channel.

Again Butterfield says the plaintiff company expended $700 or more between Tobie Falls and Sebec Lake; but the location of Tobie Falls is several miles above Davis Stream, and while it appears that $300 or $400 was expended on the back channel, it is nowhere stated or estimated what part of the remaining $300 or $400 was expended between Davis Stream and Tobie Falls, and consequently no statement of the amount claimed to have been expended between Davis Stream and the Lake, except the expense of the back channel not used by the defendants.

In cross examination when repeatedly requested to specify what improvements were actually made below Davis Stream, he makes answer as follows:

A. "I know we worked quite a lot, the men down there, blasting rocks and such work as that. We used to clean out the stream and such work as that, blasting and fix up every point we could."

And in answer to the more general inquiry as to the improvements made on Wilson Stream in addition to the erection of the dams, he says, "I know we had to blast out every year there. We had to

do it right along every year." He adds that he "had a clerk" to keep his books; but it has been seen that the "exhibit" transcribed from the books fails to give any information as to the expense of blasting at Greely Falls or any other point in the two miles between Davis Stream and the Lake, except the sorting channel which does not appear to have been used in driving the defendant's logs. It is not definitely shown that any substantial amount was expended in the permanent improvements in that part of the stream.

Thus when the indefinite character of all of Butterfield's evidence is considered in the light of his frequent reference to what was usually done every year, it does not satisfactorily appear that any "improvements" were made in that part of the stream except such as are ordinarily and incidentally made in clearing out the stream each year to facilitate the annual drive.

It is accordingly the opinion of the court that in accordance with the stipulation in the report, the certificate must be,

*Plaintiff nonsuit.*