CUERO PACKING CO. v. ALAMO MFG. CO. (No. 5728.)

(Court of Civil Appeals of Texas. Austin. April 11, 1917.)

1. CORPORATIONS ⚮382 — CHARTERS — CONSTRUCTION.

A packing company, chartered for the construction and maintenance of establishments for slaughtering, refrigerating, canning, curing, and packing meat, entered into a contract with plaintiff to maintain a refrigerating plant for turkeys to be bought by plaintiff. The packing company breached its contract, and defended the action for damages on the ground of ultra vires. Held that, while corporate powers must be strictly construed in a suit by the state or by a stockholder against the corporation, or where public interest is involved, yet, where a corporation seeks by the claim of ultra vires to avoid a contract, the strict construction rule does not apply, and hence the charter of the corporation must, though the word "and," used in connection with the clause providing for the construction and maintenance of establishments, etc., be treated as a conjunctive, the corporation must be deemed to have sufficient power to enter into the contract.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1514, 1515, 1517, 1536.]

2. CORPORATIONS ⚮399(4)—CONTRACTS—AUTHORITY OF AGENT.

The general agent being virtually the corporation itself, a contract within the charter powers of the corporation cannot be avoided by the corporation on the ground that the general agent by whom it was made was without authority; it not appearing that the directors had undertaken to restrict his powers, or that any restriction was known to the other contracting party.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1588, 1606.]

Appeal from Brown County Court; Frank H. Sweet, Judge.

Action by the Alamo Manufacturing Company against the Cuero Packing company. From a judgment for plaintiff, defendant appeals. Affirmed.

Wilkinson & McGaugh, of Brownwood, for appellant. R. E. Lee and McCartney & McGee, all of Brownwood, for appellee.

## Findings of Fact.

JENKINS, J. The Cuero Packing Company is a corporation, with its principal office at Cuero, in De Witt county, Tex., chartered for the purpose of "the construction and maintenance of establishments for slaughtering, refrigerating, canning, curing, and packing meat." On May 22, 1914, E. C. Hesse was, and for four years had been, the secretary, treasurer, and general manager of the corporation. Its president was

A. D. Edson. Its directors were A. D. Edson and Wm. D. Edson, of Philadelphia, Pa., and E. C. Hesse, Walter Reiffert, and Newton M. Crain, of Cuero, Tex. On the date mentioned the following contract was entered into between the appellant and appellee:

"Brownwood, Texas, May 22, 1914.

"Know all men by these presents, that the Alamo Manufacturing Company, a corporation of the state of Texas, party of the first part, and the Cuero Packing Company, of Cuero, Texas, party of the second part, do on this day enter into an agreement and contract, as follows: The Alamo Manufacturing Company agrees to furnish cold air in their two rooms that are now being used by them (the Alamo Manufacturing Company) for the purpose of cooling and holding turkeys, at a minimum charge, for the months of November and December following the date of this instrument, of five hundred dollars ($500.-00), to be paid as follows: Two hundred and fifty dollars on the 31st day of November, 1914, and two hundred and fifty dollars on the 31st day of December, 1914. It is further agreed that, in the event that the Cuero Packing Company handles more than one hundred thousand pounds of turkeys through these rooms, it is to pay the Alamo Manufacturing Company an additional half cent per pound for each pound over the 100 M pounds.

"It is further agreed that the Cuero Packing Company make a deposit of one hundred dollars in the bank of Brooke, Smith & Co. to further secure the Alamo Manufacturing Company and to make this instrument binding.

"Alamo Mfg. Co., per Will Lathem.
"Cuero Packing Co., by E. C. Hesse."

Appellant breached this contract, and appellee brought suit for damages by reason thereof, and judgment was awarded in its favor.

## Opinion.

[1] Appellant invokes the doctrine of ultra vires, and in support of its contention asserts that its charter did not authorize it to maintain an establishment for refrigerating turkeys, unless such establishment had been constructed by it. The language of its charter is, "the construction and maintenance of establishments," etc. It is true, as claimed by appellant, that as a general rule "and" does not mean "or." 2 Am. & Eng. Enc. of L. 333 to 380; Robinson v. Southern Pac. Co., 105 Cal. 526, 38 Pac. 94, 28 L. R. A. 773. But there are many exceptions to this rule, as appears from the notes to Enc. of Law above referred to. See also Amer. Security Co. v. Koen, 49 Tex. Civ. App. 98, 107 S. W. 939; Dam Co. v. Excelsior Co., 105 Me. 249, 74 Atl. 115; Kansas City v. Grush, 151 Mo. 128, 52 S. W. 286; Machinery Co. v. Johnson, 81 S. C. 10, 61 S. E. 1027.

It is not necessary, however, to hold that "and" means "or" in the instant case; but if the meaning insisted upon by appellants be given, that is, that "and" means "adding to," still we think the charter authorized appellant to maintain a refrigerating establishment not theretofore erected by it. That is to say, we think the language of the charter means that it may construct, and it may also maintain, such establishment, without both constructing and maintaining the same establishment. That "and" was used in this sense in the charter is evident from the fact that the company was chartered for "slaughtering, refrigerating, canning, curing, and packing meat," that is to say, for doing each of these things, and not that before being authorized to pack meat it must first refrigerate, can, and cure it.

Appellant asserts the proposition that corporate powers must be strictly construed. This depends upon who are the parties to a suit, and the purpose for which it is brought. If the suit is by the state, or by or against a municipal corporation involving legislative powers, or by a stockholder against a corporation, or where the public interest is involved, and the corporation is claiming exclusive privileges, or is seeking to avoid the discharge of its duty, the charter powers of a corporation are strictly construed. Taylor Feed Pen Co. v. Bank, 181 S. W. 537; Victoria Co. v. Bridge Co., 68 Tex. 62, 4 S. W. 140; Wharf Co. v. Railway Co., 81 Tex. 494, 17 S. W. 57; State v. Country Club, 173 S. W. 581; Insurance Co. v. Commonwealth (Ky.) 133 S. W. 793; Colorado Springs Co. v. Publishing Co., 97 Fed. 843, 38 C. C. A. 433. However, "when the corporation * * * seeks to defeat the contract because it is ultra vires, the courts are reluctant to grant relief, it being an attempt to evade a contract." Bank v. Oil Co., 24 Tex. Civ. App. 645, 60 S. W. 829.

"The question as to whether a contract is ultra vires or not may arise in a controversy between the state and a corporation, or between the corporation and the party with whom it has assumed to contract; and it may well be that different rules of construction apply to the two cases. All grants, even grants of corporate franchises, are construed strongly in favor of the government, and against the grantee. So, when the state challenges the action of one of its corporate creations, it may insist on clear warrant for such action. It may say: 'Point to the letter of your authority. I abide by my contract, and protect you in the rights and franchises I have given. Abide by your contract, and assume to do no act in disregard of the duties I have imposed, or beyond the authority I have conferred.' The rule of strict construction exists in such a case. But a milder rule applies when a corporation seeks to repudiate a contract into which it has formally entered. It is not seemly for a corporation, any more than for an individual, to make a contract and then break it; to abide by it so long as it is advantageous, and to repudiate it when it becomes onerous." Railway Co. v. Railway Co. (C. C.) 47 Fed. 22.

See, also, Machinery Co. v. Johnson, 81 S. C. 10, 61 S. E. 1028; Brewing Co. v. Boddie, 181 Ill. 662, 55 N. E. 49; Malone v. Gas Co., 182 Pa. 309, 37 Atl. 932; Gas Co. v. Dairy Co., 60 Ohio St. 96, 53 N. E. 711; Sales Co. v. Lumber Co., 193 Ala. 166, 69 South. 527; Tod v. Land Co. (C. C.) 57 Fed. 53.

In the case last above cited, the court quotes from Morawetz on Private Corporations, § 362, as follows:

" 'It is therefore * * * impossible to decide abstractly that acts of a particular description are within or without the chartered powers of a corporation. The right of a corporation to perform an act depends, in every case, upon all the surrounding circumstances.' "

In the instant case it is evident that the company was chartered, not only for "slaughtering, refrigerating, canning, curing, and packing meat," but also to sell the same in the market. It appears that their principal business consisted in buying, refrigerating, and selling turkeys in the Eastern markets, and that, while its principal office was at Cuero, it carried on this business elsewhere. Mr. A. D. Edson, president of the company, testified:

"In some instances, where the Cuero Packing Company buys turkeys outside of De Witt county, Tex., they are shipped to Cuero, Texas, for the purpose of slaughtering and cold storage. It is often the case that the Cuero Packing Company, of Cuero, Tex., buys large quantities of turkeys some distance from De Witt county, as much as 100 miles away, and has the turkeys so bought slaughtered and put into cold storage near the place of purchase, and from there ships them to the Northern and Eastern markets, without said turkeys being shipped to Cuero, Tex."

This is what the Packing Company contemplated doing when it made its contract with appellee. On May 25, 1914, A. C. Hesse, general manager of the company, at the request of Mr. A. D. Edson, president of the company, wrote appellee as follows:

"We expect to concentrate 20 cars or more, if the turkeys are in that part of the state."

[2] Appellant insists that the contract sued upon is not its contract, for the reason that Hesse had no authority to make the same. He so testified. But we think this is rather a conclusion of the witness than a statement of fact. The contract was one which the company had authority to make, and Mr. Hesse, being its general manager, had the apparent authority to act in behalf of the company, and it does not appear from the record that the directors had undertaken to restrict him in this matter, and, if they had done so, it appears that appellee had no notice of such action. "A general manager * * * is one who has general direction and control of the affairs of the corporation." Booker Jones Oil Co. v. Refining Co., 132 S. W. 816. " 'General manager' is synonymous with general agent. A general agent is virtually the corporation itself." Railway Co. v. Reisner, 18 Kan. 460. The testimony in this case sustains the finding of the trial court that the contract was within the corporate powers of appellant, and that E. C. Heese had authority to make such contract.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.