# BOARD OF SCHOOL DIRECTORS, MAINE SCHOOL ADMINISTRATIVE DISTRICT NO. 52

v.

# TRI–TOWN TEACHERS ASSOCIATION, MTA–NEA.

Supreme Judicial Court of Maine.

April 2, 1980.

---

Skelton, Taintor & Abbott, P.A., Bryan M. Dench, orally, Lewiston, for plaintiff.

Sunenblick, Fontaine & Reben, Stephen P. Sunenblick, orally, Portland, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS and GLASSMAN, JJ.

GLASSMAN, Justice.

The Board of School Directors, Maine School Administrative District No. 52 (Board), seasonably appeals from a judgment of the Superior Court, Androscoggin County, entered November 20, 1979, which denied its motion to vacate and granted the appellee's motion to confirm an arbitration award. The Board argues that the Superi-

or Court erred in refusing to vacate the award under Section 5938(1)(C) of the Uniform Arbitration Act, 14 M.R.S.A. §§ 5927–49, on the ground that the arbitrators exceeded their powers in reaching the merits of a grievance in disregard of the procedural requirements for processing the grievance contained in a collective bargaining agreement. We affirm the judgment.

The Board and the appellee, Tri-Town Teachers Association, MTA–NEA (Association), were parties to a collective bargaining agreement from September 1, 1976 until September 1, 1978. On March 16, 1978, a teacher employed by the Board filed a grievance alleging that she was not being paid at the correct level on the existing salary scale and seeking placement on the proper salary step as well as back pay. Following an unsuccessful attempt to resolve the dispute with the school principal, the teacher presented her grievance to the superintendent of schools pursuant to level 2 of the grievance procedure contained in the contract. On Thursday, April 20, one day before expiration of the five-day time period for decision, the superintendent denied the grievance, sending a copy of his decision to the teacher by certified mail.

The teacher did not receive notice of the superintendent's decision until five days later on Tuesday, April 25, when she picked up her mail at the post office. On Thursday, April 27, the teacher noted her disagreement on the grievance form, thereby indicating her intention to seek a hearing before the Board pursuant to level 3 of the grievance procedure. The teacher sent the form to the Board chairman by certified mail on Friday, April 28, and he received it on Saturday, April 29. The teacher did not provide the superintendent with a copy of the form, but the chairman gave his copy to the superintendent.

The grievance procedure is outlined in Article IV of the contract. Section 4.2.2 states that within five days of meeting with the grievant "the Superintendent shall render his decision and the reasons therefor in writing to the aggrieved person." Section 4.2.3 provides that a grievant who is unsat-

isfied with the superintendent's disposition of his grievance at level 2 *"may within three (3) days of decision* or expiration of the prescribed time submit his grievance in writing to the Board of Directors by delivering in hand or mailing postpaid a copy thereof to the then serving Chairman of the Board, *with a copy to the Superintendent."* (Emphasis added). Section 2.6 states: " 'Days' refers to calendar days, excluding Saturdays, Sundays, and legal holidays."

On the basis of these provisions, the superintendent determined that the teacher had not complied with the time limits of Section 4.2.3 or with the requirement of providing a copy of the grievance to the superintendent. Accordingly, he deemed the grievance waived and refused to schedule the matter for a hearing before the Board. The teacher then submitted her grievance to arbitration.

On December 29, 1978, following hearing, the arbitrators ruled that the teacher had satisfied the requirements of Section 4.2.3 for perfecting an appeal to level 3 of the grievance procedure. In reaching this conclusion, the arbitrators determined that the superintendent did not render his decision within the meaning of Section 4.2.2 until the teacher received actual notice of the decision. Because the decision was not operative until received on April 25, the arbitrators reasoned that the mailing of the appeal on April 28 was within the three-day time limit of Section 4.2.3. The arbitrators also determined that the teacher had satisfied the copy-to-the-superintendent requirement because the superintendent did in fact receive a copy from the Board chairman and therefore had timely notice that the teacher had appealed his decision. Concluding that the teacher had reasonably met the time requirement and had effectively met the copy requirement, the arbitrators then considered the merits of the dispute, *ruling* in part for the teacher and in part for the Board.

The Board does not dispute the arbitrability of a grievance alleging improper placement on the salary scale or the resolution of this grievance on the merits. Rather, the Board argues that the arbitrators exceeded their authority under the collective bargaining agreement because they disregarded provisions in the contract that plainly required strict compliance with all procedural formalities. Before we consider this claim, however, we must first determine the appropriate standard for reviewing the arbitral decision that the teacher complied with the procedural requirements of the contract in processing her grievance.

■ In *Westbrook School Committee v. Westbrook Teachers Association,* Me., 404 A.2d 204 (1979), we described the two-prong standard governing judicial review of arbitration awards. The question of substantive arbitrability—"Did the parties intend to submit the particular dispute to arbitration?", *id.* at 207,—goes to the jurisdiction of the arbitrator to make the award. Final decision on this question must rest with the independent determination of the court and not with the arbitrator. As we stated in *Westbrook,* "[t]o hold otherwise would be to give the arbitrator the extraordinary power of determining his own jurisdiction, to the exclusion of the courts or any other authority." *Id.* Once the court has determined the particular dispute arbitrable, however, several policy considerations require that a different standard of review be applied to a challenge under 14 M.R.S.A. § 5938(1)(C) that the arbitrator has exceeded his powers in making an award. The arbitrator's decision on the merits of an arbitrable dispute commonly involves his construction of the contract. In *Westbrook* we noted that "unlike the determination of substantive arbitrability, construction of the contract for the purpose of deciding the merits of a dispute is ordinarily a task for the arbitrator, not the court." *Id.* at 208; *see Caribou Board of Education v. Caribou Teachers Association,* Me., 404 A.2d 212, 214 (1979). Although typically the construction of a contract poses a legal question for the court, judicial deference to the arbitrator's interpretation of the agreement is dictated by the need for finality in arbitration awards, a realization of the complexity of labor relations and the expertise of the

arbitrator, and the principle that the parties have bargained for the arbitrator's construction of the contract. *Westbrook School Committee v. Westbrook Teachers Association, supra,* 404 A.2d at 208. Judicial review of the merits of the award is therefore limited to an inquiry whether the arbitrator has acted arbitrarily or capriciously. " 'Arbitrators may not travel outside the agreement in reaching a conclusion since, if they did so, they would not be interpreting and applying the contract but basing their conclusion on their own individual concept of industrial justice in the particular area involved.' " *Id.* at 209, quoting *Board of Directors of Maine School Administrative District No. 75 v. Merrymeeting Educators' Association,* Me., 354 A.2d 169, 170–71 (1976); *see United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596–97, 80 S.Ct. 1358, 1360–61, 4 L.Ed.2d 1424 (1960). Thus, as we observed in *Westbrook,* an arbitrator does not exceed his power in deciding the merits of an arbitrable dispute unless the court "finds no rational construction of the contract that can support the award." 404 A.2d at 209.

In the instant case, the Board contends that the question whether the teacher complied with the time and notice requirements of the grievance procedure is one of substantive arbitrability because the detailed, specific procedures to be followed in the processing of a grievance represent the limits of what the parties have agreed to arbitrate. Prior to *Wiley & Sons v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), a few courts held that this issue of "procedural arbitrability" was a question for the court and not for the arbitrator on the ground that compliance with the grievance procedure was a prerequisite to the obligation to arbitrate. *E. g., Boston Mutual Life Insurance Co. v. Insurance Agents' International Union,* 258 F.2d 516, 522 (1st Cir. 1958); *Vulcan-Cincinnati, Inc. v. United Steelworkers,* 113 Ohio App. 360, 367, 173

N.E.2d 709, 714 (1960). *See generally* Benewitz, *On Timely Grievances and Arbitrability,* 34 Arb. J. 6, 6–8 (1979). In *Wiley,* the United States Supreme Court expressly rejected this view and approved the position of a majority of federal circuit courts that once a court determines the parties intended to submit the substantive controversy to arbitration it should defer to the arbitrator's determination of procedural questions growing out of the dispute just as it does his determination of the substantive claim, upholding this determination so long as it draws its essence from the agreement. 376 U.S. at 557, 84 S.Ct. at 918; *see, e. g., Local 771, IATSE v. RKO General, Inc.,* 546 F.2d 1107, 1113 (2d Cir. 1977). The *Wiley* Court noted that questions of procedural arbitrability were for the arbitrator and not the court because procedural disagreements are often inextricably intertwined with the substantive dispute and procedural questions commonly cannot be resolved without consideration of the merits. 376 U.S. at 556–57, 84 S.Ct. at 917–18. Moreover, where substantive arbitrability is clear, treating a procedural disagreement as a justiciable issue apart from the merits of the substantive dispute would cause duplication of effort between the arbitrator and the court and would engender delays in the arbitration process, thereby frustrating the purpose of arbitration as a speedy and efficient mechanism for settling disputes. *Id.* at 557–59, 84 S.Ct. at 918–19.

The *Wiley* rule that procedural questions are for arbitral resolution has been uniformly followed by the federal courts, *e. g., Local 51, IBEW v. Illinois Power Co.,* 357 F.2d 916, 918–19 (7th Cir.), *cert. denied,* 385 U.S. 850, 87 S.Ct. 78, 17 L.Ed.2d 79 (1966); *Local 595, International Association of Machinists v. Howe Sound Co.,* 350 F.2d 508, 511 (3d Cir. 1965); *Cast Optics Corp. v. Textile Workers Union,* 333 F.Supp. 239, 241 (S.D.N.Y.1970),[1] and has been applied to

---

1. In support of its position, the Board relies on *Detroit Coil Co. v. Int'l Ass'n of Machs. Lodge 82,* 594 F.2d 575 (6th Cir.), *cert. denied,* —— U.S. ·—— , 100 S.Ct. 79, 62 L.Ed.2d 52 (1979). Contrary to the Board's contention, however,

the *Detroit Coil* court did not hold that questions of procedural timeliness were for the court and not the arbitrator. Rather, the court held that "the arbitrator's award cannot be deduced rationally from the Agreement, nor

public sector labor disputes by several state courts, including Maine, *e. g., Lewiston Firefighters Association v. City of Lewiston*, Me., 354 A.2d 154, 167 (1976);[2] *City School District v. Poughkeepsie Public School Teachers Association*, 35 N.Y.2d 599, 607, 324 N.E.2d 144, 147, 364 N.Y.S.2d 492, 497 (1974); *School Committee v. Pawtucket Teachers Alliance*, 390 A.2d 386, 390 (R.I. 1978).

As we suggested in the *Lewiston* case, *supra*, we find *Wiley* persuasive authority for the proposition that the appropriate standard for reviewing questions of procedural arbitrability is to uphold the arbitrator's interpretation of the procedural provisions of the agreement so long as that interpretation is a rational construction of the contract. To hold otherwise would require the court to draw an artificial and often-difficult distinction between the arbitrator's interpretation of the substantive provisions of the contract and his construction of its procedural provisions. *See* Cox, *Reflections upon Labor Arbitration*, 72 Harv.L.Rev. 1482, 1510–11 (1959). In addition, to impose a more intensive standard of review on interpretative determinations deemed "procedural" would undermine those policy considerations we noted in *Westbrook* as requiring deference to arbitral decision making. Furthermore, holding that questions of procedural arbitrability are for the court would encourage pre-arbitration actions under 14 M.R.S.A. § 5928 and thereby cause unwarranted delays in the arbitration process. Such a result would be contrary to the manifest purpose of grievance arbitration as a final, speedy, inexpensive dispute settlement mechanism. *See Board of Directors of Maine School Administrative District No. 33 v. Teachers' Association*, Me., 395 A.2d 461, 462 (1978).

Applying the rule we have adopted to the facts of the instant case, it is clear that the finding of the arbitrators that the teacher complied with the time and copy-to-the-superintendent requirements of the contract is a rational interpretation of the agreement. The Board contends that the following contractual provisions required strict compliance with all procedural formalities:

Art. IV, § 3.1. Grievances shall be processed as quickly as possible. The number of days for action provided at any level is a maximum limit. Time limits are of the essence, and any failure to observe time limits will constitute a waiver of the grievance.

Art. IV, § 4.2.4. No Board of Arbitration or court shall have the power to extend any of the time limits set forth herein or to overlook any informality in the processing of grievances. The time limits as established herein are intended to be firm and final and shall in all instances be construed as such.

No Board of Arbitration or court shall have any power to ignore any of the specific provisions of this collective bargaining agreement or to amend or vary or annul any such provision . . . .

The Board's argument cannot prevail under the applicable standard of review. In concluding that the teacher had satisfied the time and copy requirements of Section 4.2.3, the arbitrators endeavored to interpret the contract. However we would interpret this agreement, the arbitrators did not exceed their powers if their interpretation, even if erroneous, nevertheless was rationally grounded in the agreement. *Board of Directors of Maine School Administrative District No. 33 v. Teachers' Association, supra*, 395 A.2d at 463; *United Steelworkers v. Enterprise Wheel & Car Corp., supra*, 363 U.S. at 598–99, 80 S.Ct. at 1361–62. Section

does the award draw its essence from the Agreement." *Id.* at 581. The *Detroit Coil* decision is therefore consistent with the position of the Sixth Circuit that compliance with the requirements of the grievance procedure is a question for the arbitrator. *Local 748, Int'l Union of Elec., Radio & Mach. Workers v. Jefferson City Cabinet Co.*, 314 F.2d 192, 194–96 (6th Cir. 1963), *cert. denied*, 377 U.S. 904, 84 S.Ct. 1162, 12 L.Ed.2d 175 (1964).

2. "[A]n adequate consideration of procedural questions often requires analysis of the merits of the dispute and the final disposition of such questions should be left to the arbitrator." *Lewiston Firefighters Ass'n v. City of Lewiston, supra*, 354 A.2d at 167.

4.2.2 of the contract, which requires the superintendent to "render his decision and the reasons therefor in writing to the aggrieved person," can rationally be read as imposing an obligation on the superintendent to notify the teacher and as contemplating that the receipt of this decision by the teacher, and not the decision itself, triggers the commencement of the three-day appeal period. *See generally* F. Elkouri & E. Elkouri, How Arbitration Works 146–54 (3d ed. 1978). The apparent purpose of the copy-to-the-superintendent requirement contained in Section 4.2.3 is to notify the superintendent of the appeal so that he, as Board secretary, can schedule a hearing on the agenda of the next Board meeting. Because the Board chairman immediately gave his copy of the grievance form to the superintendent, the arbitrators rationally determined that notice to the chairman was under the facts of the case notice to the superintendent and that the teacher's failure to send the superintendent a separate copy of the form was therefore totally immaterial. In so interpreting the effective date of the superintendent's decision and the meaning of the copy requirement, the arbitrators rationally concluded that they did not "extend any of the time limits" or "overlook any informality," as prohibited by the ninth paragraph of Section 4.2.4, or, contrary to the tenth paragraph, "ignore," "amend," "vary," or "annul" any provision of the agreement.

The parties bargained for, and received, the arbitrators' construction of the contract. This construction involved interpretation of the procedural as well as the substantive provisions of the agreement. Because this interpretation was rationally grounded in the contract, the Superior Court correctly determined that the arbitrators had not exceeded their powers under the agreement.

The entry is:

Appeal denied.

Judgment affirmed.

POMEROY and ARCHIBALD, JJ., did not sit.