**GRANGER NORTHERN, INC.**

v.

**Eric L. CIANCHETTE, et al.**

Supreme Judicial Court of Maine.

Argued Jan. 29, 1990.
Decided March 23, 1990.

---

Leland N. Chisholm (orally), U. Charles Remmel, Kelly, Remmel & Zimmerman, Portland, for plaintiff.

George J. Marcus, Gregory D. Woodworth (orally), Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, for defendants.

Before WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

CLIFFORD, Justice.

The four defendants, Eric Cianchette, Kenneth Cianchette, A. Earl Brown and William Brown, appeal from a judgment of the Superior Court (Cumberland County, *Fritzsche, J.*) affirming an arbitrator's award in favor of the plaintiff, Granger Northern, Inc. We reject the defendants' contentions that the dispute was not arbitrable and that the arbitrator exceeded his authority and affirm the judgment.

In 1985, Granger Northern, Inc. ("Granger") contracted with Armory Hotel Associates ("Associates")[1] for the design and construction of a luxury hotel in Portland, to be called the Old Port Regency Hotel. The construction contract provided that Granger would complete the project for a guaranteed maximum price of $4,388,350. The contract could be varied during the course of construction through the use of change orders. Article 9 of the contract defined a change order as

> a written order to the Contractor signed by the Owner or his authorized agent and issued after the execution of this Agreement, authorizing a Change in the Project and/or an adjustment in the Guaranteed Maximum Price....

The contract further required that Associates designate a representative with the authority to approve such orders and entitled the contractor to rely upon the decisions made by that representative.[2]

---

1. Armory Hotel Associates ("Associates"), a Maine general partnership, was comprised of two classes of partners, denominated as Class A and Class B partners. The Class A, or "Maine partners," were the defendants, Eric Cianchette, Kenneth Cianchette, A. Earl Brown and William Brown. The Class B, or "Massachusetts partners," were Allan Jones, Stephen Jones and Robert Welch. The partners of each class owned fifty of the one hundred units that comprised the partnership.

2. Article 3 of the contract provided that:
   [t]he Owner shall designate a representative who shall be fully acquainted with the Project, and has authority to approve changes in the scope of the Project, render decisions promptly, and furnish information expedi-

Eleven change orders amounting to $246,705 were prepared by Granger before the project was completed. All the change orders were evidenced by standard American Institute of Architects change order forms. Of the eleven, five were approved in writing by Robert Welch as "agent for" Iyanough Management,[3] while the remaining six were not signed.[4]

Granger instituted an action against Associates and its seven partners to recover $1,008,614, of which $246,705 was for work performed pursuant to the eleven change orders. The Maine partners sought a stay of Granger's demand for arbitration. The Superior Court refused to stay the arbitration. After seven days of hearings, the arbitrator found against Associates and ordered that Granger be paid $1,008,614, plus interest. The Superior Court denied the motion of the Maine partners to vacate the arbitrator's award and granted Granger's motion for entry of judgment on the record. The Maine partners then brought this appeal.

■ Under the Uniform Arbitration Act, 14 M.R.S.A. §§ 5927–5949 (1980), the Superior Court reviews both the substantive determination of arbitrability and the power exercised in granting an award. *Westbrook School Comm. v. Westbrook Teachers Ass'n*, 404 A.2d 204, 206–07 (Me.1979) (construing 14 M.R.S.A. §§ 5928, 5938 (Supp.1978–79)). Our review is limited to errors of law made by the Superior Court. *Id.* at 206 n. 3.

■ On appeal, the Maine partners contest the validity of that portion of the arbitrator's award entitling Granger to recover $246,705 for the work performed pursuant to the change orders. They first contend

that the arbitrator did not have proper jurisdiction to decide the dispute over the change orders and that the Superior Court erred in not granting their motion to stay the arbitration proceedings.

When parties enter an agreement providing that disputes will be submitted to arbitration,[5] a particular dispute is arbitrable " 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " *Westbrook School Comm.*, 404 A.2d at 208 (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). The question of substantive arbitrability, reserved to the trial court, depends upon the intent of the parties and may be determined by reference to principles of contract interpretation. *Id.* at 207; *Hartford Fin. Sys., Inc. v. Florida Software Serv., Inc.*, 550 F.Supp. 1079, 1086–87 (D.Me.1982). The arbitration clause in article 9 of the contract between Granger and Associates provides that,

[a]ll claims, disputes and other matters in question arising out of, or relating to, this Agreement or the breach thereof, except with respect to the Architect/Engineer's decision on matters relating to artistic effect, and except for claims which have been waived by the making or acceptance of Final Payment shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise.

tiously and in time to meet the [target] dates set forth.... The ... information required ... shall be furnished with reasonable promptness ... and the Contractor shall be entitled to rely upon the accuracy and the completeness thereof.

3. Iyanough Management ("IM") is a partnership engaged in operating hotels. The three Massachusetts partners of Associates are the principals of IM. IM had a contract with Associates to manage the Old Port Regency upon its completion, but was given no role in the construc-

tion process and was prohibited from contracting for anything in excess of $10,000.

4. Of those six change orders, two were for additional work required by the City of Portland.

5. 14 M.R.S.A. § 5927 provides in pertinent part that,

a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable....

Although they do not contest the validity of the arbitration clause, the Maine partners contend that it is not applicable to the change orders that they maintain constitute separate contracts. We disagree. An "all disputes" arbitration clause like the one at issue gives authority to the arbitrator to decide all "contract-generated or contract-related disputes between the parties however labelled...." *Acevedo Maldonado v. PPG Indus., Inc.*, 514 F.2d 614, 616 (1st Cir.1975). Since disputes over change orders were not specifically excluded from the ambit of the arbitration clause, and the work completed by Granger pursuant to the change orders was performed on and directly related to the construction of the Old Port Regency Hotel, the subject of the contract, those disputes were arbitrable under the "all disputes" arbitration clause. *Acevedo Maldonado*, 514 F.2d at 616; *Bel Pre Medical Ctr., Inc. v. Frederick Contractors, Inc.*, 21 Md.App. 307, 320 A.2d 558, 566 (1974), *rev'd on other grounds*, 274 Md. 307, 334 A.2d 526 (1975). The change orders are not so unrelated and separate from the construction contract that we can say " 'with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' " *Westbrook School Comm.*, 404 A.2d at 208 (quoting *United Steelworkers*, 363 U.S. at 582–83, 80 S.Ct. at 1353).

The Maine partners also contend that the arbitrator exceeded his authority in awarding Granger recovery for the change order work. Their contention is based on the fact that the change orders were not executed in accordance with the contract.[6]

The standard for review of whether an arbitrator exceeds his authority is a narrow one. *Bureau of the Maine State Police v. Pratt*, 568 A.2d 501, 505 (Me.1989). We will "conclude that an arbitrator exceeded his powers by travelling outside the agreement ... [only] 'if all fair and reasonable minds would agree that the construction of the contract made by the arbitrator was not possible under a fair interpretation of the contract....' " *Westbrook School Comm.*, 404 A.2d at 209 (quoting *University of Alaska v. Modern Constr. Co.*, 522 P.2d 1132, 1137 (Alaska 1974) (quotations omitted)). Though the court must construe the contract in order to apply this standard, *id.* at 208, the arbitrator's interpretation need not coincide with the court's in order to be upheld. *Id.* at 211–12.

Here, the arbitrator had to decide whether Granger was precluded from recovering for work on the hotel project that was undertaken and completed upon change orders that were not executed in accordance with the express terms of the contract.[7] Although the change orders were not executed in accordance with the terms of the written contract, Granger, as the contractor, is not precluded as a matter of law from recovering for work that was fully performed.

Although the arbitrator did not make findings in elaboration of his award,[8] his conclusion that Granger is entitled to recover for the work performed pursuant to the change orders is justified under the facts of this case and principles of contract law. A provision in a contract that permits only those changes made in writing may be modified by agreement of the parties. *See Copeland v. Hewett*, 96 Me. 525, 528–29, 53 A. 36 (1902); *see also Restatement (Second) of Contracts* § 150, comments b, e (1981). Moreover, there is substantial evidence in the record that could justify the conclusions that the change orders were authorized by Robert Welch, a partner in

---

6. *See supra* p. 137.

7. Granger's position is that all of the change orders were properly authorized. Five of the change orders were signed by Robert Welch. Although those forms were signed on behalf of Iyanough Management, Welch was also a partner in Associates and was the person who was on the project site and dealing with Granger. Granger considered Welch to be Associates' agent designated in accordance with article 3 of the contract. *See supra* note 2; *see also infra* p. 140.

8. An arbitrator is not required to make findings, *Lisbon School Comm. v. Lisbon Educ. Ass'n*, 438 A.2d 239, 245 (Me.1981), and none were requested.

Associates, and that he was, under article 3 of the contract, the representative designated by the owner with the authority to approve changes and upon whose decisions Granger was entitled to rely. Other possible defenses, such as estoppel, would also be matters that could be considered by the arbitrator, and on these facts, could justify his award. *See Lewiston Firefighters Ass'n v. City of Lewiston*, 354 A.2d 154, 167–68 (Me.1976) (affirmative defense of laches properly submitted to arbitration).

We cannot say that the construction of this contract by the arbitrator " 'was not possible under a fair interpretation of the contract.' " *Westbrook School Comm.*, 404 A.2d at 209 (quoting *University of Alaska*, 522 P.2d at 1137).

The entry is:

Judgment affirmed.

All concurring.