## CITY OF WESTBROOK

v.

## TEAMSTERS LOCAL NO. 48 et al.

Supreme Judicial Court of Maine.

Argued June 15, 1990.

Decided July 18, 1990.

Michael D. Cooper (orally), Desmond, Cooper, Manderson & Millett, Westbrook, for plaintiff.

Stephen Sunenblick (orally), Sunenblick, Reben, Benjamin & March, Portland, for defendants.

Before McKUSICK, C.J., and ROBERTS, WATHEN, CLIFFORD, COLLINS, and BRODY, JJ.

McKUSICK, Chief Justice.

On this appeal by the City of Westbrook, we review the decision of a three-member arbitration panel overturning the City's dismissal of Patrolman Peter J. Blanchette of the Police Department. Blanchette is represented by Teamsters Local No. 48, which has a collective bargaining agreement (Agreement) with the City. The Agreement provides for arbitration of grievances, including those involving disciplinary matters. The arbitrators selected by the City and the Union found the City's disciplinary action against Blanchette unwarranted because the City did not have adequate evidence of Blanchette's alleged breach of duty. The arbitrators awarded Blanchette reinstatement with back pay. Upon the City's application to vacate the award, the Superior Court (Cumberland County, *McKinley, J.*) affirmed, finding that the arbitrators' decisions both on the procedural arbitrability of the dispute and on its substantive merits were amply grounded in the Agreement. On the City's appeal, we also affirm the arbitrators' award for the same reasons.

Blanchette was accused of tipping off a friend who was to be the subject of a child sexual abuse investigation by the State Police. Blanchette had learned of the investigation at a department meeting during which Chief of Police Ronald Allanach specifically warned the officers that the State Police investigation was extremely confidential, that the subject was known to have personal ties with people in the department, and that any officer who was responsible for a leak of information would be immediately discharged. After word of the sex abuse case by some means reached the subject and after the department internally investigated the leak, Chief Allanach suspended Blanchette with pay. Upon looking further into the matter, Chief Allanach recommended to Westbrook Mayor Philip Spiller that Blanchette be dismissed.

Upon the Union's request, Mayor Spiller held a "Step 2" hearing as required by Article 13(B) of the Agreement. The Mayor issued his decision to fire Blanchette on September 13, 1988. Blanchette filed a formal grievance on the grounds that the City had failed to notify him of his termination within 24 hours in violation of Article 9 of the Agreement,[1] and used excessive discipline in violation of Article 12.[2] The City denied the grievance.

The Union subsequently informed the City that it intended to seek arbitration of the dispute. The City discussed arbitration with the Union and participated in selecting the arbitrators. The Union did not file a written request for arbitration until October 21, 1988. Following two days of hearings, the three-member arbitration panel ruled unanimously that the Union's request for arbitration was procedurally effective, even though made beyond the 10–day period specified by the Agreement, and that the City had violated the Agreement when it disciplined Blanchette without adequate proof that he had indeed leaked word of the State Police investigation.

I.

*Procedural Arbitrability*

On appeal the City contends that the Union's written request for arbitration was untimely and that the arbitrators erred in finding that the City had consented to an extension of time. We have held that "the appropriate standard for reviewing questions of procedural arbitrability is to uphold the arbitrator's interpretation of the procedural provisions of the agreement so long as that interpretation is a rational construction of the contract." *Board of*

1. In the later arbitration, the panel found that the City had not violated Article 9 of the Agreement. The Union has not appealed that ruling.

2. Article 12(A) provides in pertinent part:
   Disciplinary action shall include only the following: oral reprimand, written reprimand, suspension (notice to be given in writing) and/or discharge.

   Disciplinary action may be imposed upon an employee only for failing to fulfill his responsibilities as an employee. Any disciplinary action or measure imposed upon an employee may be processed as a grievance through the regular grievance procedure.

*School Directors, Maine School Admin. Dist. No. 52 v. Tri–Town Teachers Ass'n, MTA–NEA,* 412 A.2d 990, 994 (Me.1980). *See also Saco Valley Teachers Ass'n v. Board of Directors, Maine School Admin. Dist. No. 6,* 447 A.2d 72, 74 (Me.1982).

Article 13(B) of the Agreement outlines the procedure to be used for processing grievances.[3] After the filing of a grievance and a Step 1 hearing, the Union can request and receive a Step 2 hearing with the Mayor. The Mayor's response is due within seven working days of the hearing. If the grievance remains unsettled, Step 3 provides that the Union may, within ten working days after the Mayor's Step 2 response is due, request in writing that the dispute be submitted to arbitration. The lead-in clause of Article 13(B) specifically provides that the applicable time limits may be extended by mutual consent of the parties. *See* n. 2 above.

Blanchette's Step 2 hearing was held on September 9, 1988. By application of the terms of Article 13(B), the Mayor's response was due on September 20 and the Union's written request for arbitration was due on October 4, 1988. The Union did not file its written request for arbitration until October 21, 1988. The Union argued, however, that because it had made its intent to file for arbitration known to the City before the 10–day notice period had expired and because the City acknowledged that oral notice by discussing arbitration and participating in the selection of arbitrators, the City had effectively consented to an extension of time as permitted by the lead-in clause of Article 13(B). After the evidentiary hearing, the arbitrators ruled:

3. Article 13(B) of the Agreement provides:

*The following procedures shall be used in the handling of grievances provided that time limits may be extended by mutual consent of the parties:*

Before an employee and/or the Union files a formal written grievance, an attempt shall be made to settle the dispute with the affected employee's immediate supervisor.

Step 1: If the grievance is not satisfactorily settled informally, a written grievance may be filed within ten (10) working days of the act or omission giving rise to the grievance or within ten (10) working days from the time the employee should reasonably have been aware of the grievance. The Department Head shall hold a hearing on the grievance within five (5) working days from receipt of the grievance. The employee and/or Union steward shall be given an opportunity to present their case and to respond to any evidence or allegations of the City.

*Step 2: If the grievance is not satisfactorily settled at Step 1, the employee and/or Union may request a Step 2 hearing with the Mayor or his personal representative within five (5) working days of the date the Step 1 response is due. The Step 2 hearing shall be scheduled with the Union within five (5) working days. The Mayor or his personal representative, whoever shall have conducted the hearing, shall respond in writing to the Chief Steward and the employee within seven (7) working days of the Step 2 hearing.*

Step 3: If the dispute remains unresolved, the employee and/or the Union may within ten (10) working days after the Step 2 response is due request in writing that the dispute be submitted to arbitration in accordance with the following:

a. The parties shall within seven (7) days of the request for arbitration mutually agree on an arbitrator....

b. As an alternative to the selection of a single arbitrator as set forth in subsection a., the parties, upon mutual consent, may request that a tri-partite panel of the Maine Board of Arbitration and Conciliation be selected to serve as the arbitrator. All procedures and standards of review set forth herein shall apply to their determination.

*c. Grievances involving disciplinary action, lay-offs, demotions and transfers shall be subject to the grievance procedure, but no arbitrator shall have the power to substitute his or her judgment for that of the City to overrule the decision of the City unless he/she finds that the City acted arbitrarily, in bad faith, without reason and in violation of the specific terms of this agreement.*

d. The decision of the arbitrator shall be final and binding on both parties provided the arbitrator complies with the following:

1. The authority of the arbitrator is limited to disposing of the precise issue submitted.

2. If either party raises the issue of arbitrability, the arbitrator shall make a preliminary ruling on the issue subject to appeal by either party to a court of a competent jurisdiction.

3. The arbitrator's decision shall be consistent with the laws of the State of Maine.

4. The arbitrator shall have no authority to alter or add to any terms of this contract or to impose on the City any duty, responsibility or limitation not expressly set forth in this contract.

(Emphasis added)

It seems clear that the Union's intention of proceeding to arbitration was known to the City before the deadline. Testimony indicates, however, that the discussion was informal—the City Solicitor, appearing as a witness, indicated [that] no conclusive or definitive discussion had taken place; a Union witness testified that proceeding to arbitration (Step 3) had been indicated to Management by the Union and that the discussion had occurred within a day or two after the Mayor's letter of September 13.

Giving credence and greater weight to the Union's position that Management was aware of the Union's intention to proceed to Step 3, is the discussion between City and Union officials about the choice of arbitrators and their joint decision to use the Maine Board of Arbitration and Conciliation, an alternative under Article 13, Section B, Subsection b. According to the Agreement, the alternative selected had to be mutually agreed to by the parties. No testimony, evidence, or objections indicate that this provision of the Agreement was not followed.

Thus, it must be concluded that the City knew of the Union's intention to proceed to arbitration—discussion between the City and the Union led mutually to the decision to follow the alternative described in Article 13, B. b., in selecting arbitrators at Step 3.

It is also noted that the Agreement specifically allows for extension of time limits by mutual consent, as indicated by the emphasized phrase in the opening sentence of Section B. . . . The Agreement does not state the extension must be in writing.

By entering into discussion with the Union and then jointly selecting who should arbitrate the grievance, the City in effect concurred with the Union in waiving the time limits at Step 3, an extension allowed under the Agreement. Thus, the City's objections to arbitrability because of violation of the timeliness provision is not convincingly argued.

The panel's analysis is a rational construction of the Agreement. By virtue of the City's actions, the arbitrators concluded that the City had notice of the Union's intent to seek arbitration and on that basis began discussions preliminary to the Step 3 proceeding. The Agreement does not require that an extension of time for requesting arbitration be in writing, nor that consent to an extension of time be in writing. On these facts the arbitrators could rationally conclude that the City had joined the Union in extending the Union's time for formally requesting arbitration pursuant to the agreement. *See Tri–Town Teachers Ass'n,* 412 A.2d at 994.

The City argues that this interpretation of the time-extension provision of the Agreement places it in a no-win situation. If the City refused to discuss arbitration with the Union because of the Union's failure to serve a timely written request, the City contends that it might be charged with violation of the Agreement or with a "prohibited practice" under Maine labor law. If, on the other hand, the City discussed arbitration despite the Union's failure to make a timely written request for arbitration, then the City could be held to have waived the timeliness argument in later hearings before arbitrators and courts. This argument is at best unconvincing. In the circumstances of the present case, the City had the obligation just as soon as the timeliness issue arose, namely, upon the expiration of the 10–day notice period, to inform the Union that it would assert the time-bar in any upcoming arbitration. Having done so, the City would have effectively preserved its objection to the Union's failure to make a timely arbitration request and the time-bar issue would itself be adjudicated in any later arbitration. Here, however, the City did nothing to preserve the issue. Rather, the City, knowing of the Union's intent to seek arbitration, participated in selecting the arbitrators. The arbitrators' finding, in these circumstances, that the City effectively consented to an extension of time to file the formal arbitration request, is a rational interpretation of the evidence in the context of the underlying Agreement. Nothing more is required for that finding to withstand our review.

## II.

### Substantive Arbitrability

■ The City's substantive contention on appeal is that the arbitrators exceeded their authority under Article 13(B)(c), the supersession clause, when they substituted their judgment for the City's and reinstated Blanchette. With regard to such contentions, we have declared that:

The standard for review of whether an arbitrator exceeds his authority is a narrow one. We will "conclude that an arbitrator exceeded his powers by travelling outside the agreement ... [only] 'if all fair and reasonable minds would agree that the construction of the contract made by the arbitrator was not possible under a fair interpretation of the contract....' "

*Granger Northern, Inc. v. Cianchette,* 572 A.2d 136, 139 (Me.1990) (citations omitted). *See also Bureau of Maine State Police v. Pratt,* 568 A.2d 501, 505 (Me.1989); *Westbrook School Comm. v. Westbrook Teachers Ass'n,* 404 A.2d 204, 209 (Me.1979).

After hearing all the evidence against Blanchette, the arbitrators concluded that by taking disciplinary action that was not supported by adequate evidence, the City had taken unwarranted disciplinary action against Blanchette and so had violated the Agreement. On the basis of that violation alone, the arbitrators substituted their judgment for that of the City and ordered Blanchette's reinstatement with back pay. Article 13(B)(c) permits the arbitrators to make this decision only if they found "that the City acted arbitrarily, in bad faith, without reason and in violation of the specific terms of this [A]greement." The City contended, and continues to contend on this appeal, that the Agreement must be interpreted to require the arbitrators to find all four grounds before substituting their judgment for the City's and that because the arbitrators found only that the City had violated the Agreement, they were not empowered to override the City's judgment in discharging Blanchette.

After careful consideration, the arbitrators rejected the interpretation of the supersession clause urged by the City. They reasoned:

Article 13, Section B, Subsection c ... states, **"Grievances involving disciplinary action, lay-offs, demotions and transfers shall be subject to the grievance procedure, but no arbitrator shall have the power to substitute his or her judgment for that of the City to overrule the decision of the City unless he/she finds that the City acted arbitrarily, in bad faith, without reason and in violation of the specific terms of this agreement."** ... The first of the two criteria are essentially procedural safeguards while the fourth—violation of the specific terms of the agreement—goes to the substantive heart of the matter. The third condition, "without reason," is so vague and full of diverse meanings as to be useless as a standard for conduct or for evaluating that conduct.

The City argues that the use of the word "and" as a conjunction meant that all four criteria must be met in order to overrule the City's decision to discharge the Grievant. In other words, that Arbitrators would have to determine that the City acted in an arbitrary fashion, in bad faith, without reason and in violation of specific terms of the Agreement. In extending this reasoning to its logical conclusion, credulity is stretched to the breaking point. What if the City did <u>not</u> act in arbitrary fashion, or in bad faith or without reason (whatever that means) but still violated specific terms of the Agreement? According to the City's interpretation, the grievance would have to be denied because the Union could not establish that <u>all four</u> of the conditions had been violated. Discipline would have to be upheld no matter how trivial or serious the City's violation of the Agreement might have been. Such an interpretation reduces the Agreement to an empty document and it is difficult to imagine [that] negotiators on either side intended the meaning the City has given Article 13. Thus, Article 13 must be discounted as a standard in evaluating actions which resulted in this grievance.

(Boldfaced emphasis added; underlined emphasis in original)

The supersession clause is an obvious attempt to limit the authority of the arbitrators, and the City and the Union could have used language that would unambiguously limit the arbitrators' authority in the way here advocated by the City. Our review of the arbitrators' decision, however, is limited to the determination of whether "all fair and reasonable minds would agree that the construction of the contract made by the arbitrator[s] was not possible under a fair interpretation of the contract...." *See Granger Northern,* 572 A.2d at 139. The arbitrators carefully reasoned that the critical "and" in the supersession clause must be read in the disjunctive to give the parties' intended effect to the Agreement;[4] they could rationally conclude that a violation of the Agreement, enumerated as one of the grounds for arbitral supersession of the City's decision, was enough by itself to empower them to exercise their independent judgment on the disciplinary question. Although their construction of the Agreement might not be that which we as an original matter would reach, we cannot say that it is so unreasonable as to be impossible under a fair interpretation of the contract.

By their submission of disputes to arbitration under the Agreement, the parties made the arbitration panel the proper forum to interpret the language in the supersession clause in a way consistent with the entire Agreement. Because their construction of the supersession clause is a plausible one, we must defer to this decision as a legitimate exercise of the arbitrators' authority. *See Caribou Board of Education v. Caribou Teachers Ass'n,* 404 A.2d 212 at 215 (Me.1979) ("In making the determination whether an arbitrator has exceeded his authority the agreement must be broadly construed, and all doubts will usually be resolved in favor of his authority"). "It is, after all, the arbitrator's construction of the contract that was bargained for and only where there is manifest disregard of

the contract will we disturb the award." *Bureau of Maine State Police v. Pratt,* 568 A.2d at 505.

The entry is:

Judgment affirmed.

ROBERTS, WATHEN, and BRODY, JJ., concur.

CLIFFORD, Justice, with whom COLLINS, Justice, joins, dissenting.

I agree with the court that the case was procedurally arbitrable. In addressing the substance of the arbitration, however, the arbitrators, in direct contravention of Article 13(B)(c) of the collective bargaining agreement, examined the grievance *de novo* and substituted their judgment for that of the City in overruling the City's decision to discipline Officer Blanchette. Therefore, I disagree with the court's conclusion that the arbitrator's construction of the Agreement was plausible, and respectfully dissent.

The standard of judicial review of an arbitrator's substantive decision is a narrow one, and is correctly stated by the court. In this case, however, Article 13(B)(c) of the Agreement specifically limits the power of the arbitrators to decide cases involving employee discipline by providing that

no arbitrator shall have the power to *substitute his or her judgment for that of the City* to overrule the decision of the City *unless* he/she finds that the City acted arbitrarily, in bad faith, without reason *and* in violation of the specific terms of the agreement.

(Emphasis added).

I agree with the court that the conjunctive word "and" may in certain circumstances be read as a disjunctive "or," but only when necessary to make sense of the contract. In this case, however, such a reading eviscerates rather than clarifies the limitation placed upon the scope of review and allows the arbitrators to decide

4. We have ourselves in the context of particular contracts found the word "and" to have a disjunctive, rather than conjunctive, meaning. *See, e.g., Wilson Stream Dam Co. v. Boston Ex-* *celsior Co.,* 105 Me. 249, 252, 74 A. 115, 116 (1909) (the word "and" in a contract may be construed as "a convertible term used in the sense of 'or'" to make sense of the contract).

this case free from the restraints imposed by Article 13(B)(c).

In my judgment Article 13 of the Agreement is in no way ambiguous. Its purpose is to limit the authority of the arbitrators in their review of the City's disciplinary actions, and it does so. The arbitrators did not interpret an ambiguous provision; they disregarded a perfectly clear limitation on their authority and, in a *de novo* fashion, decided the City had failed to convince them as factfinders by a preponderance of the evidence that Officer Blanchette had disclosed confidential information to a criminal suspect.[1] Although the evidence may have permitted a factfinder to conclude that the City had failed in its burden, the arbitrators discounted Article 13 entirely, allowing them to accord no deference to the decision of the City. Such a construction "was not possible under a fair interpretation of the contract...." *Westbrook School Comm'n v. Westbrook Teachers Ass'n*, 404 A.2d 204, 209 (Me.1979).

I would vacate the judgment of the Superior Court and remand for entry of a judgment vacating the arbitrators' award.

---

1. In their opinion the arbitrators conclude that Article 13, limiting their scope of review, "must be discounted as a standard in evaluating actions which resulted in this grievance." They discuss their "reluctance to give full weight to the various accounts of what [a witness] is reported to have said." Although they determine that "maybe" the officer disclosed information about an upcoming investigation to the suspect (the finding made by the City), they conclude that "the preponderance of the evidence does not support the City." These discussions and findings clearly demonstrate that rather than deferring to the credibility judgments made by the City, as Article 13(B)(c) compels them to do, the arbitrators completely ignored Article 13(B)(c) and "substitute[d] [their] judgment for that of the City to overrule the decision of the City...."