**CITY OF BANGOR**

v.

**LOCAL 926, COUNCIL # 74, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO.**

Supreme Judicial Court of Maine.

Argued Nov. 20, 1980.

Decided June 1, 1981.

Eaton, Peabody, Bradford & Veague, Malcolm E. Morrell, Jr., Glen L. Porter, Bangor, for plaintiff.

Sunenblick, Fontaine & Reben, Stephen P. Sunenblick, Portland, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, GLASSMAN,* ROBERTS and CARTER, JJ.

McKUSICK, Chief Justice.

The City of Bangor (the City) appeals to the Law Court from a judgment of the Superior Court, Penobscot County, confirming an arbitration award. The arbitrators found that the City had a contractual obligation to negotiate over the addition of a union security provision to the collective bargaining agreement existing between it and Local 926, Council # 74, American Federation of State, County and Municipal Employees, AFL–CIO (the Union).[1] We hold that the board of arbitrators in making that finding exceeded its powers and that the Superior Court should have vacated the arbitration award. We therefore reverse the Superior Court judgment.

On March 2, 1979, the City and the Union entered into a collective bargaining agreement, article 3, section 2 of which provides:

*If during the term of this Agreement or any extension thereof, 26 M.R.S.A. Sec. 964(1)(B) is construed by the Maine Su-*

---

* Glassman, J., sat at oral argument and in the initial conference, but died before this opinion was adopted.

1. The Union is the bargaining agent for employees of the Operations and Maintenance Division of the City's Department of Public Services.

**42**

*preme Judicial Court* or amended by the Maine State Legislature *to allow for union security provisions in public employee collective bargaining agreements, the issue of inclusion of union security provisions in this Agreement will be open for negotiation by either party hereto.*

(Emphasis added) Section 964(1)(B)[2] is part of the labor relations statute applicable to *municipal* employees, namely, 26 M.R.S.A. § 961 *et seq.*, the Municipal Public Employees Labor Relations Act (M.P.E.L.R.A.).

On May 31, 1979, the Union requested the City to open negotiations with it on the issue of inclusion of a union security provision[3] in their existing collective bargaining agreement. In the period of less than three months intervening between execution of the agreement and the Union's request for negotiations, the justices of the Supreme Judicial Court had on April 30, 1979, given an advisory opinion to the House of Representatives relative to a "fair share" union security clause in a proposed agreement with the Maine State Employees Association representing certain bargaining units of *state* employees. *See Opinion of the Justices*, Me., 401 A.2d 135 (1979). That "fair share" provision, by which nonmember employees in the bargaining unit would be required to pay the union 80% of members' dues, purportedly representing the cost of union services to those nonmembers, would not, in the justices' opinion, violate the freedoms guaranteed under the labor relations statute applicable to *state* employees, namely, 26 M.R.S.A. § 979 *et seq.*, the State

Employees Labor Relations Act (S.E.L.R.A.).

The City refused to enter into negotiations with the Union over a union security clause, asserting that the condition precedent to such negotiations prescribed by article 3, section 2, quoted above, had not been satisfied. Thereupon, the Union invoked the four-step grievance procedure provided by the collective bargaining agreement to settle a dispute concerning the "application, meaning, or interpretation" of any of its provisions. The fourth and final step is binding arbitration. Since the Union and the City agree that section 964(1)(B) has never been amended by the legislature, the question before the board of arbitrators was whether

> 26 M.R.S.A. Sec. 964(1)(B) [had been] construed by the Maine Supreme Judicial Court ... to allow for union security provisions in public employee collective bargaining agreements.

The arbitration board concluded that "[t]aking the [advisory] opinion, together with the other evidence presented"

> it must be *construed* that the Maine Supreme Judicial Court allows for unions security provisions [sic] in public employee bargaining agreements.

(Emphasis in original) The "other evidence presented" to the arbitrators was, first, the Law Court's 1977 opinion in *Churchill v. S.A.D. No. 49 Teachers Ass'n*, Me., 380 A.2d 186 (1977),[4] which in footnote 5 expressly disclaimed any intimation as to the validity of a "fair share" type of union security clause under the municipal employees labor

---

**2.** 26 M.R.S.A. § 964(1)(B) (1974) states:

  1. Public employer prohibitions. Public employers, their representatives and their agents are prohibited from:

      . . . .

      B. Encouraging or discouraging membership in any employee organization by discrimination in regard to hire or tenure of employment or any term or condition of employment;

**3.** The term "union security provisions" used by the City and the Union in article 3, section 2 of their agreement was meant, we understand, to include, *inter alia*, "agency shop" clauses such as that involved in *Churchill v. S.A.D. No. 49*

*Teachers Ass'n*, Me., 380 A.2d 186 (1977), and "fair share" clauses such as that involved in *Opinion of the Justices*, Me., 401 A.2d 135 (1979). In *Churchill* the Law Court, more than 15 months before the City and the Union entered into their agreement, had held unlawful under M.P.E.L.R.A., including 26 M.R.S.A. § 964(1)(B), an "agency shop" clause that, as a condition of continued employment in the bargaining unit, exacted from nonmembers union fees equal to dues paid by union members.

**4.** See n. 3 above.

relations statute, and, second, a letter[5] from the Attorney General's office to a state representative, which the arbitrators said "clearly indicate[d] the comparability and interchangeability of interpretations of rulings from one part [of Title 26] dealing with municipal employees to other parts dealing with state employees . . . ." On that "evidence" the arbitrators found that the contractual condition precedent for negotiations on a union security provision had been satisfied and that the City was under an obligation to bargain with the Union on that issue.

On opposing motions of the City to vacate the arbitration award[6] and of the Union to confirm it, the Superior Court ordered the city to negotiate with the Union as provided in article 3, section 2 of the collective bargaining agreement. The Superior Court justice decided to confirm the arbitrators' award entirely on the basis of the 1979 *Opinion of the Justices, supra.* He found, first, that the arbitrators had not exceeded the scope of their authority by considering that advisory opinion. Second, he concluded that the rationale upon which the justices' *Opinion* approved of a fair share union security provision under S.E.L.R.A. was equally applicable to M.P.E.L.R.A., for the advisory opinion was based largely upon language common to both labor relations acts. *See Opinion of the Justices, supra* at 147. *Compare* 26 M.R.S.A. § 979–F(2)(E) (S.E.L.R.A.) *with* 26 M.R.S.A. § 967(2) (M.P. E.L.R.A.). Third, citing *Board of Directors of Maine School Administrative District No. 33 v. Teachers' Association of Maine School Administrative District No. 33, (SAD 33),* Me., 395 A.2d 461 (1978), the Superior Court justice concluded that the disputed contractual provision, article 3, section 2, raised only a question of law, and that the arbitrators' answer to that question was bargained for by the parties and, once it had been given, it became binding upon them.

We conclude that the Superior Court should have vacated the award, rather than to have confirmed it. The basic question originally faced by the arbitrators was one of interpreting article 3, section 2 of the collective bargaining agreement: As a condition precedent for mandatory negotiations over a union security clause, does that contract provision require a precedentially controlling ruling by the Supreme Judicial Court as to the municipal employees labor relations statute? Plainly, the arbitrators answered that question in the negative; they found that "26 M.R.S.A. Sec. 964(1)(B) [has been] construed by the Maine Supreme Judicial Court" on the basis of legal inferences drawn by the arbitrators from an advisory opinion relating to the similar, but distinct, state employees labor relations statute.

The parties to the Bangor collective bargaining agreement contracted for the arbitrators' decision on questions of the "application, meaning or interpretation" of article 3, section 2. It is established law that, in reviewing an arbitration award based on an interpretation of a collective bargaining agreement, "a court will not substitute its judgment for that of an arbitrator," *Westbrook School Committee v. Westbrook Teachers Ass'n,* Me., 404 A.2d 204, 209 (1979), but on the other hand it must "refuse to enforce the arbitrator's award, if it finds no rational construction of the contract that can support the award." *Id.* In that event the court "will conclude that the arbitrator exceeded his powers by traveling outside the agreement." *Id.* The issue then before the court below, and now before the Law Court, is whether there is rational support for the arbitrators' construction of article 3, section 2, which mandates negotiations over adding a union security clause only

---

5. Since this letter is not in the record before the Law Court, we must on the City's appeal assume that the letter fully supports the arbitrators' summary of what it "clearly indicate[d]." *Cf. Summit Realty, Inc. v. Gipe,* Me., 315 A.2d 428, 429–30 (1974).

6. The City brought its motion to vacate the arbitrators' award pursuant to a provision of the Uniform Arbitration Act, 14 M.R.S.A. § 5938(1)(C) (1980), which declares that the Superior Court "shall vacate an award where . . . [t]he arbitrators exceeded their powers . . . ."

[i]f during the term of ... [the] Agreement ... *26 M.R.S.A. Sec. 964(1)(B) is construed by the Maine Supreme Judicial Court* or amended by the Maine State Legislature to allow for union security provisions in public employee collective bargaining agreements.

(Emphasis added) We conclude that the arbitrators' construction of the collective bargaining agreement does not find such support.

◼ Here the parties did not bargain for the arbitrators' legal construction of 26 M.R.S.A. § 964(1)(B).[7] They bargained for a specific triggering event, in the form of either a legislative amendment or a court construction, that would have a legal effect upon their bargaining relationship. The legislature has not acted to amend section 964(1)(B). Nor do we believe it is possible to say that the Maine Supreme Judicial Court has acted to construe section 964(1)(B) to allow for union security provisions, within any rational construction of article 3, section 2 of the City's contract with the Union. The *Opinion of the Justices, supra,* relied upon by the arbitrators and the Superior Court, does not constitute a construction of section 964(1)(B) by the Maine Supreme Judicial Court.[8]

The bargained-for trigger for mandatory negotiations on a union security clause was plainly a judicial declaration by the whole Supreme Judicial Court in a litigated case so that the construction of section 964 so declared would be precedentially binding upon all persons, including the present contracting parties. In other words, by the clear terms of article 3, section 2, negotia-tions over a union security clause would become required only in the event of a judicial construction of section 964(1)(B) by the Maine Supreme Judicial Court that had a general binding quality comparable to a legislative amendment of that section. The 1979 *Opinion of the Justices, supra,* does not satisfy that condition precedent. It was not the action of the Maine Supreme Judicial Court. It instead represented the opinion of the several justices acting individually in discharge of their individual constitutional responsibility "to give their opinion upon important questions of law, and upon solemn occasions, when required by the Governor, Senate or House of Representatives." *See* Me.Const. Art. VI, § 3. And that advisory opinion was not a *judicial* construction of provisions relevant to union security. *See State v. Cleveland,* 58 Me. 564, 573 (1870). In subsequent litigation, that advisory opinion will not bind either the same or different justices acting collegially as the Law Court nor the litigants who bring an actual controversy before the Law Court on appeal. *Opinion of the Justices,* Me., 396 A.2d 219, 223 (1979); *Martin v. Maine Savings Bank,* 154 Me. 259, 268–69, 147 A.2d 131, 136–37 (1958). It more nearly resembles advice given by an attorney to a client than a decision rendered by a court in a litigated matter. It has no precedential or stare decisis consequences. "The giving of advisory opinions is not the exercise of the judicial function at all, and the opinions thus given have not the quality of judicial authority." *Laughlin v. City of Portland,* 111 Me. 486, 497, 90 A. 318, 323 (1914), *quoting* Thayer, *The Origin and Scope of the American Doctrine of Constitutional Law,* 7 Harv.L.Rev. 129, 153 (1893).

---

7. This fact distinguishes the case urged by the Union and cited by the Superior Court in support of confirming the arbitration award, *SAD 33, supra,* Me., 395 A.2d 461 (1978).

8. It is readily observable that that advisory opinion involved a construction of the *state* labor relations law, and not at all a construction of the *municipal* labor relations law of which section 964(1)(B) is a part. But we do not base our decision on that narrow and obvious point. Many of the provisions in the state employee labor relations law are worded identically to provisions in the municipal employee labor relations law. Thus, for instance, section 964(1)(B) of the municipal employee law has an exact counterpart in section 979–C(1)(B) of the state employee law. However, whether the individual justices who gave their advisory opinion on the *state* law to the House of Representatives would or would not, if asked in the future, give the same construction to the *municipal* law is irrelevant to the only question at issue here—which, again, is whether the arbitrators could rationally conclude, basing their judgment on the specific language of article 3, section 2, that the event triggering negotiations over union security had occurred.

By inserting the clause "[i]f ... Sec. 964(1)(B) is construed by the Maine Supreme Judicial Court" in article 3, section 2, the parties bargained for a judicial construction of section 964(1)(B) that would, similarly as a legislative amendment, precedentially bind all persons, including the City and the Union. For the arbitrators to treat the parties as if they had bargained for something much less was to modify the clear meaning of article 3, section 2, in violation of the statutory restriction that arbitrators "shall have no authority to add to, subtract from or modify the collective bargaining agreement." 26 M.R.S.A. § 970 (1974). *See International Union of Operating Engineers, AFL–CIO, Local No. 670 v. Kerr-McGee Refining Corp.,* 618 F.2d 657 (10th Cir. 1980); *General Drivers, Warehousemen and Helpers, Local Union No. 89 v. Hays & Nicoulin, Inc.,* 594 F.2d 1093 (6th Cir. 1979). Since the 1979 *Opinion of the Justices, supra,* did not change or affect, either directly or by analogy, the status of the municipal labor relations law, no rational construction of the words "[i]f ... Sec. 964(1)(B) is construed by the Maine Supreme Judicial Court ... to allow for union security provisions" can find in that advisory opinion the condition precedent to mandatory negotiations for which the parties had bargained. *See Westbrook School Committee v. Westbrook Teachers Ass'n, supra,* 404 A.2d at 208–09.

The entry must be:

Judgment reversed.

Remanded to the Superior Court with direction to vacate the award of the Board of Arbitrators dated February 25, 1980.

All concurring.