**MAINE STATE EMPLOYEES ASSOCIATION, et al.**

v.

**STATE of Maine, DEPARTMENT OF DEFENSE and Veterans' Services.**

Supreme Judicial Court of Maine.

Argued May 14, 1981.

Decided Nov. 2, 1981.

---

Shawn Keenan (orally), Augusta, for plaintiff.

Linda D. McGill (orally), Augusta, for defendant.

Before McKUSICK, C. J., and WER-NICK,* NICHOLS, ROBERTS and CARTER, JJ.

ROBERTS, Justice.

The Department of Defense and Veterans' Services, State of Maine (Department) appeals a decision of the Superior Court, Kennebec County, vacating an arbitrator's denial of a grievance filed by the Maine State Employees Association (MSEA), and Albert Giandrea and Adrien St. Amand. Giandrea and St. Amand are employees of the Department and members of the Operations, Maintenance and Support Services Bargaining Unit (Unit). The MSEA is the certified bargaining agent for employees within the Unit. The grievance claimed that the Department's selection of a nonunit applicant over either Giandrea or St. Amand to fill a vacancy within the Department violated the collective bargaining agreement between the Department and the MSEA. We reverse the judgment of the Superior Court.

The facts are not in dispute. In August 1979, the Department posted notice of a job vacancy for the position of Maintenance Mechanic. The Department interviewed seven applicants for the position, including Giandrea and St. Amand, ranked all applicants in the order of their qualifications, and ranked the grievants sixth and seventh. The Department hired an applicant who was ranked first and who was not a state employee.

The MSEA contends that the selection of an applicant who was not a member of the bargaining unit when qualified members of

---

* WERNICK, J., sat at oral argument and participated in the initial conference, but retired prior to the adoption of this opinion.

the unit had applied for the position violated article XXIV(F) of the collective bargain agreement. Article XXIV entitled "Seniority" states in part:

F. Filling of Non-Competitive Vacancies

In the event of a vacancy in a non-competitive position, positions shall be filled on the basis of: first, ability and qualifications to perform the duties of the higher classification and second, where the "first" is equal among two or more employees, seniority shall govern.

All job vacancies shall be posted in the applicable department, agency, organizational unit or unit division for ten (10) work days. Any employee wishing to be considered for an applicable promotion shall file a written, dated application with his/her appointing authority or designee within the posting period. Job posting notices shall indicate the name and title of the person to whom applications should be submitted. Seasonal and part-time employees shall have the right to apply for full-time vacancies and shall be given consideration in accordance with their abilities, qualifications and seniority.

The MSEA read this provision as requiring that current employees, "insiders," are entitled to preference in hiring over any non-employees, "outsiders," so long as the insider is qualified to do the job.

In support of this position, the MSEA emphasizes that the term "higher classification" in the first paragraph of XXIV(F) has meaning only if the clause is interpreted to apply to incumbent employees. They also note the specific inclusion of seasonal and part-time employees in the hiring process and the requirement of posting job vacancies at the workplace as indicative of a preference for current employees. In short, the MSEA asserts that the language of the provision contemplates a scheme of favoring in-house promotion rather than off-the-street appointments.

The arbitrator agreed that the language of Article XXIV(F) "can be interpreted to exclude outsiders in the filling of vacancies." Several factors, however, apparently dissuaded him from adopting the position of the MESA. First, the arbitrator viewed the posting requirement as a device for communicating the existence of job vacancies rather than an indication of a limitation on the Department's ability to hire outsiders. Second, although stating that the Article in question "can be read to apply to the type of grievance at hand," the arbitrator noted that the clause was silent as to the proper steps to be taken when insiders are not qualified or when hiring is for entry level positions. Finally, the arbitrator stated that management never believed it was limiting itself to the employment of insiders when it agreed to the clause at issue. In support of this position the arbitrator specifically notes the testimony of Gary Mather concerning his conversation with one of the state negotiators, shortly after the close of negotiations.[1] Mather indicated that Article XXIV(F) was meant to "break the tie" when only equally qualified insiders applied for a job vacancy. The arbitrator also referred to the lack of a promotional structure in the Department as evidence that the state did not intend to rely on promotions to fill vacancies within the Department. The arbitrator found further support for this view in the language of Article LIII.[2] He

---

1. The MSEA asserts, as a ground for vacating the award, admission and use of parol evidence in the form of Mather's testimony. While we are aware that the rules of evidence are not strictly applied in arbitration hearings, see 6 T. Kheel, *Labor Law* § 24.04[3] (1978), the parol evidence rule is not a rule of evidence but of substantive law. *Interstate Industrial Uniform Rental Service Inc. v. F. R. Lepage Bakery Inc.*, Me., 413 A.2d 516, 519 (1980). This rule, however, does not prohibit the use of extrinsic evidence in order to assist a factfinder in interpreting the language of the contract as the expression of the intent of the parties, where the contract language is ambiguous. We do not believe the use of extrinsic evidence in this case represents a departure from the proper application of this rule.

2. ARTICLE LIII. MANAGEMENT RIGHTS
    The MSEA agrees that the State has and will continue to retain the sole and exclusive rights to manage its operations and retains all management rights, whether exercised or not, unless specifically abridged, modified or

reasoned that the right to administer the merit system means the "openness of employment within the state to all citizens of the state" and thus concluded the Department was not limited to the consideration of insiders to fill job vacancies.

In its motion to the Superior Court to vacate the award, the MSEA asserted that the arbitrator exceeded his powers in rendering his decision because the denial of the grievance was an "award inconsistent with the Agreement and which adds to, subtracts from or modifies the provisions of the Agreement."

■■■ Under 14 M.R.S.A. § 5938(1)(C) the Superior Court is empowered to vacate an award where "the arbitrators exceeded their powers." When the grievance before the arbitrator arises under the terms of the collective bargaining agreement, the four corners of that contract define the limits of his power. *Westbrook School Committee v. Westbrook Teachers Association*, Me., 404 A.2d 204, 208 (1979). "Arbitrators may not travel outside the agreement in reaching a conclusion since, if they did so, they would not be interpreting and applying the contract but basing their conclusion on their own individual concept of industrial justice ...." *Id.* at 209 *quoting Board of Directors of Maine School Administrative District No. 75 v. Merrymeeting Educators' Association*, Me., 354 A.2d 169, 170–71 (1976); *Accord, Board of School Directors, Maine School Administrative District No. 52 v. Tri-Town Teachers Association*, Me., 412 A.2d 990, 993 (1980). The burden of proving such a claim rests on the party attacking the correctness of the award. *Seppala & Aho-Spear Associates v. Westbrook Gardens*, Me., 388 A.2d 88, 90–91 (1978); *R. C. Audette & Sons, Inc. v. LaRochelle*, Me., 373 A.2d 1226, 1228 (1977).

■■■ In ascertaining whether the arbitrator exceeded his powers in making an award, we must bear in mind that the construction of the contract is a task for the arbitrator, not the court. *Westbrook School Committee v. Westbrook Teachers*

*Association*, 404 A.2d at 208. "[J]udicial deference to the arbitrator's interpretation of the agreement is dictated by the need for finality in arbitration awards, a realization of the complexity of labor relations and the expertise of the arbitrator, and the principle that the parties have bargained for the arbitrator's construction of the contract." *Board of School Directors, Maine School Administrative District No. 52 v. Tri-Town Teachers Association*, 412 A.2d at 992–93. A court will, therefore, uphold an award if any rational construction of the contract can support that award. *City of Bangor v. Local 926, Council # 74, AFSCME*, Me., 430 A.2d 41, 43 (1981); *Westbrook School Committee v. Westbrook Teachers Association*, 404 A.2d at 209.

■ The issue before the court below and now before the Law Court is whether, under this narrow standard of review, there is rational support in the contract for the conclusion reached by the arbitrator. *See City of Bangor v. Local 926, Council # 74, AFSCME*, 430 A.2d at 43. Regardless of how we might interpret the agreement, "the ... [arbitrator] ... [does] not exceed ... [his] powers, if ... [his] interpretation, even if erroneous, nevertheless was rationally grounded in the agreement." *Board of School Directors, Maine School Administrative District No. 52 v. Tri-Town Teachers Association*, 412 A.2d at 994.

■ Here, the language of Article XXIV(F) could conceivably support the claim of the MSEA. However, in light of the reservations contained in Article LIII and the lack of any clear or express language addressing the instant issue in Article XXIV(F), we cannot conclude that the arbitrator's decision exhibits a "manifest disregard" for the terms of the agreement. *See Westbrook School Committee v. Westbrook Teachers Association*, 404 A.2d at 209. Nor do we believe that the intimations by the arbitrator, in his written opinion, that the language of the contract could support the Association's claim renders the award sufficiently ambiguous or inconsistent to

---

delegated by the provision of this Agreement. Such rights include but are not limited to: ... the right to direct its work force; to

administer the merit system; ... to determine the size and composition of the work force....

justify vacating the award. *See United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424, 1428 (1960).[3]

The court's function is to review the *award* of an arbitrator and not, necessarily, to search the arbitrator's *opinion* for faulty reasoning. We cannot conclude that all reasonable minds would agree that the ultimate construction of the contract was impossible under a fair interpretation of the bargaining agreement. *Westbrook School Committee v. Westbrook Teachers Association*, 404 A.2d at 209. Since the Superior Court lacked justification for vacating the award, we reverse and remand for the entry of a judgment affirming the award.

The entry is:

Judgment of Superior Court reversed.

Remanded to Superior Court for entry of a judgment confirming the arbitrator's award.

All concurring.

**3.** A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award. Arbitrators have no obligation to the court to give their reasons for an award. To require opinions free of ambiguity may lead arbitrators to play it safe by writing no supporting opinions. This would be undesirable for a well-reasoned opinion tends to engender confidence in the integrity of the process and aids in clarifying the underlying agreement.

*United States Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. at 598, 80 S.Ct. at 1361, 4 L.Ed.2d at 1428 (footnotes omitted).