STATE OF MAINE
KENNEBEC, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-13-01
*MMM — KEN-12/10/2013*

PATRICIA GALOUCH,

Petitioner,

v.

ORDER ON MOTION TO
VACATE ARBITRATION
AWARD

STATE OF MAINE, DEPARTMENT OF
PROFESSIONAL AND FINANCIAL
REGULATION, BUREAU OF INSURANCE,

Respondent.

Before the Court is Petitioner Patricia Galouch's Motion to Vacate the Arbitration Award

AAA Case No. 11 390 02265 10, State # 2010-220-M dated November 13, 2012 (the

"Arbitration Award") brought pursuant to the Uniform Arbitration Act, 14 M.R.S.A. §§ 5927-

5949.

## PROCEDURAL AND FACTUAL BACKGROUND

Patricia Galouch ("Galouch") was employed as an Office Associate II by the Maine

Bureau of Insurance, a State of Maine agency within the DPFR from May 6, 2006 to October 22,

2010. (Br. of Pet. 1.) On March 10, 2009, along with her attorney and Maine State Employees

Association SEIU Local 1989 ("MSEA-SEIU") representatives, she engaged in mediation with

the State. (Br. of Pet. 1.) The parties reached an agreement and Galouch agreed to dismiss or

withdraw all her past grievances and complaints; the State promised to retain her position,

1

improve working conditions, remove certain files within her employment file regarding discipline, and pay her attorney's fees. (Br. of Pet. 1.)

On December 16, 2009, MSEA-SEIU filed a grievance on Galouch's behalf in connection with an oral reprimand she had received from one of her supervisors for failing to follow directions in a particular matter. (Br. of Pet. 2.) On January 13, 2010, Galouch reported to her supervisor that she believed a certain State subcontractor had breached the terms of a court reporting service agreement. (Br. of Pet. 2.) Galouch alleges that her Supervisor, Tom Record, and Deputy Superintendent, Eric Cioppa, were angered that Galouch had decided to report this supposed violation. (Br. of Pet. 2.)

On January 28, 2010, the Superintendent of the Bureau of Insurance, Mila Kofman, placed Galouch on involuntary (i.e., paid) administrative leave. (Br. of Pet. 2.) The notice of suspension stated that Galouch's suspension was based on allegations that she had exceeded the authority and/or duties of her position, and that if the allegations were substantiated, they would lead to discipline and even discharge. (Br. of Pet. 2; Ex. 1.) Galouch alleges that she was placed on administrative leave and ultimately terminated because of her January 13 whistleblowing reports. (Br. of Pet. 2.) Additionally, she claims she was dismissed without proper prior notice, without an opportunity to understand the allegations leveled against her or respond to them, and without regard to the express terms of the March 10, 2009 Settlement Agreement. (Br. of Pet. 2.)

On July 12, 2010, Galouch received a letter dated July 9, 2010 from Kathy Weymouth, an Investigator with the State of Maine Office of Employee Relations ("OER"), seeking an interview with Galouch "in connection with the allegations that she exceeded her authority." (Br. of Pet. 2; Ex. 2.) The investigation request also indicated that Galouch was being reviewed based on reports of additional performance issues discovered since she had been placed on

2

administrative leave, "including inattention to detail, entering incorrect information into a database, and failure to follow direction." (Br. of Pet. 2; Ex. 2.)

On August 17, 2010, Galouch along with her Union Steward and Representative met with Investigator Weymouth concerning the State's investigation. (Br. of Pet. 2.) Investigator Weymouth issued a report to State BOHR General Counsel Joyce Oreskovich on September 9, 2010 entitled "Patricia Galouch Investigation." (Br. of Pet. 2.) On September 27, 2010, Galouch received notice from Superintendent Kofman that DPFR was terminating her employment. (Br. of Pet. 3.) On October 15, 2010, a *Loudermill* hearing was held at which Galouch and her MSEA-SEIU Field Representative met with Commissioner Anne Head and Ms. Oreskovich. (Br. of Pet. 3.) Following this hearing, on October 19, 2010, Galouch received notice from Commissioner Head stating her employment was terminated effective October 22, 2010. (Br. of Pet. 3; Ex. 3.)

Subsequently, in accordance with the applicable Collective Bargaining Agreement (the "CBA"), MSEA-SEIU submitted a request for arbitration to the American Arbitration Association, which was set to be reviewed by Joan Martin, Arbitrator (the "Arbitrator"). The request alleged that Galouch's termination was without just cause and without regard for or deference to the law or terms of the 2009 Settlement Agreement. (Br. of Pet. Ex. 8.) The parties to arbitration, the State and MSEA-SEIU, agreed on the following two issues to be addressed by the Arbitrator: whether there was just cause to terminate Galouch and what should the remedy be if no such good cause was found. (Br. of Pet. Ex. 4 at 1.) The Arbitration Hearing was held on March 22, April 3, April 26, June 6, June 11, June 19, July 16, and July 17, 2012, and was attended by all parties with the Arbitrator.[1] (Br. of Pet. 3.) After the Hearing was over, the

---

[1] Galouch notes that there is no typed transcript or audiotape available because neither the State nor MSEA-SEIU retained court reporters or recorders for the arbitration. (Br. of Pet. 3.)

3

parties submitted briefs, and on November 13, 2012, the Arbitrator issued her opinion ruling that the DPFR had terminated Galouch without just cause. (Br. of Pet. 3; Ex. 4.) However, the Arbitrator upheld the termination because she concluded that Galouch had failed to perform her duties as an employee of the Bureau of Insurance even adequately.[2] (Br. of Pet. 3; Ex. 4.) Galouch then notified MSEA-SEIU that she would be filing this motion to vacate the Arbitration Award *pro se*. (Br. of Pet. 3.)

## STANDARD OF REVIEW

The role of courts in post-arbitration judicial review is very limited. The Maine Uniform Arbitration Act, 14 M.R.S.A. § 5938(1) provides that an arbitrator's award will be vacated if, among other things, the arbitrator exceeded her authority. The standard for determining whether an arbitrator exceeded her authority is a narrow one. *Dep't of Transp. v. Maine State Emps. Ass'n, SEIU Local 1989*, 606 A.2d 775, 777 (Me. 1992). The Court will uphold an arbitrator's award if it is supported by any rational construction of the collective-bargaining agreement. *Maine State Emps. Ass'n v. Maine Dep't of Defense*, 436 A.2d 394, 397 (Me. 1981). A court may not substitute its judgment for that of the arbitrator. *Dep't of Transp.*, 606 A.2d at 777. It is the arbitrator's construction of a contract that is bargained for, and only when there is a manifest disregard of the contract or the award contravenes public policy, will the court disturb the award. *Id. See also Bureau of Maine State Police v. Pratt*, 568 A.2d 501, 505 (Me. 1989). The mere fact that an arbitrator commits an error of law does not mean that she has exceeded his authority. *Id.*

---

[2] The Arbitrator's Award was, as presented:
1. The State of Maine did not have just cause to terminate the Grievant.
2. The Grievant shall be awarded back pay from the date of her termination, October 22, 2010 until the date of this award, November 13, 2012.
3. The Grievant shall be reimbursed for any verifiable medical expenses incurred during the time of her termination, if those expenses would otherwise have been paid by her insurance coverage if she had been employed.
4. The Grievant shall not be reinstated to her position with the State of Maine.
(Br. of Pet. Ex. 4 at 33.)

4

Not to give such a broad discretion to the arbitrator's award would give courts the final say on the merits of the arbitration and undercut the benefits of labor arbitration—namely, speed, flexibility, informality, and finality. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

## DISCUSSION

### *Does Galouch Have Standing to Challenge the Arbitration Award?*

The first issue before this Court is whether Galouch has standing to challenge the Arbitration Award even though she is not a signatory to the CBA and did not participate in the arbitration as a party. While other courts have addressed this narrow issue, it has not yet been before the Law Court.[3] Courts that have considered whether an aggrieved employee has standing to challenge an arbitration award have held that the challenger will have standing if she is a "party" to the collective bargaining agreement[4] or to the arbitration.[5]

---

[3] *See, e.g., Plumley v. S. Container, Inc.*, 125 F. Supp. 2d 556, 559 (D. Me. 2000) ("In general, an individual employee lacks standing either to enforce an arbitration award.") (citing *Cleveland v. Porca Co.*, 38 F.3d 289, 296 & n. 5 (7th Cir.1994)).

[4] *Stahulak v. City of Chicago*, 703 N.E.2d 44, 46 (Ill.1998) (holding that because the plaintiff was not a party to the collective bargaining agreement, he lacked standing to bring a lawsuit to vacate an arbitration award); *Miller v. Bd. of Regents of Higher Educ.*, 405 Mass. 475 (Mass. 1999) (holding that under a state statute regulating collective bargaining agreements, a unionized employee did not have standing to seek to set aside an arbitration award); *Farmer v. H.O. Penn Mach.*, 375 N.Y.S.2d 17, 18 (N.Y. App. Div. 1975) (holding that the petitioner could not complain of the arbitration award because he was not a party to the collective bargaining agreement).

[5] *Kozura v. Tulpehocken Area Sch. Dist. & Tulpehocken Educ. Ass'n*, 791 A.2d 1169, 1174 n. 7 (Pa. 2002) (stating that where a collective bargaining agreement provides that a union and not an individual employee can request arbitration, the employer and the union are the only parties to the arbitration and only they can seek relief from an adverse award); *accord Taylor v. State Bd. of Mediation & Arbitration*, 736 A.2d 175, 179 (Conn. App. Ct. 1999) (holding that unless the collective bargaining agreement establishes a personal right to seek arbitration, an employee is not a party to the arbitration and lacks standing to seek confirmation of the award); *Wilson v. Bd. of Educ. of the City of New York*, 689 N.Y.S.2d 222, 222 (N.Y. App. Div. 1999) (holding that the petitioner could not seek to vacate the arbitration award because he was party neither to the arbitration nor to the collective bargaining agreement); *Cornell v. Caren*, 428 N.Y.S.2d 764, 766 (N.Y. App. Div. 1980) (holding that the petitioner lacked standing to seek vacation of the award because he was not a party to the arbitration).

5

Here, the only two parties to arbitration were the State and MSEA-SEIU. (Br. of Pet. Ex. 4.) The caption of the Arbitrator's Decision is styled "*Maine State Employees Association Local 1989, SEIU, AFL-CIO and State of Maine Department of Professional and Financial Regulation.*" (Pet. Ex. 4 at 1.) It refers to Galouch as "Grievant," and not as "Party." (Br. of Pet. Ex. 4 at 9-14, 20-23.) Nor was Galouch a signatory to the CBA; the only signatories to the contract were the State and MSEA-SEIU. (Br. of Pet. Ex. 5 at 81.) Because Galouch was not a party to the CBA or the arbitration, she has no standing to challenge the Arbitration Award, unless there exists an independent basis conferring standing—if she is an intended third-party beneficiary under the CBA with an enforceable right to individually challenge the Arbitration Award.[6]

The courts that allowed aggrieved employees to proceed with their actions challenging an arbitration award did so on the basis of the language of the collective bargaining agreement at issue. *See, e.g., Kozura*, 791 A.2d 1169. In those cases, the agreement on its face intended to permit unionized employees to assert grievances individually, or to arbitrate or challenge the results of such proceedings on their own behalf. For example, in *Kozura*, the court held that an aggrieved employee had standing because the collective bargaining agreement contained the following provisions: "If the grievance has not been settled in Step Three, it may be referred to arbitration by the Employee(s)" and "An Employee may be represented at any and all steps of this procedure by a person of their choice." *Id.*

It is not enough for the collective bargaining agreement to simply bring about some benefit to the aggrieved employee. In *Falsetti v. Local Union No. 2026, United Mine Workers of*

---

[6] The Court agrees with Galouch that in general, third-party intended beneficiaries have standing to enforce a contract, however, this is not the issue before this Court. The narrow issue here is whether the CBA intended to give Galouch an enforceable right to individually challenge the Arbitration Award in spite of her not being a signatory to the contract.

*America*, the court specifically rejected the argument that an employee should be entitled to enforce a seniority provision in the agreement because it was intended to benefit unionized employees and not the union. 161 A.2d 882, 893 (Pa. 1960). On the contrary, the Court held that the employee's cause of action was precluded by a contractual grievance and arbitration procedure, which, by its very terms, limited access thereto to the union. *Id.*

The CBA before this Court is unlike the one in *Kozura*. The language of the CBA provides as follows: "if the grievance has not been satisfactorily resolved in Step 3, then **MSEA-SEIU** may submit the grievance to arbitration by submitting a request for arbitration to the Chief Counsel of Employee Relations as well as a statement of the grievance." (Br. of Pet. Ex. 5 at 32 (emphasis added).) It further provides that "[t]he State shall not deny any employee MSEA-SEIU representation at any stage of the grievance procedure and **MSEA-SEIU shall have the exclusive right to represent employees** in any grievance." (Br. of Pet. Ex. 5 at 33 (emphasis added).) This language in the CBA unambiguously suggests that it was not the intention of the State or MSEA-SEIU to allow State employees, like Galouch, to enforce individually their rights under the CBA's grievance and arbitration provisions. In fact, to do so would thwart the purpose of *collective* bargaining.

Although this Court is of the opinion that Galouch and similarly situated employees do not have standing to challenge an arbitration award obtained by MSEA-SEIU pursuant to Step 4 of the Grievance Procedure, it does not mean that these employees are left without recourse. An individual employee may bring such a claim if she by her motion to vacate an arbitration award also alleges and proves that the union breached its duty of fair representation in connection with the substance of her claim. *Plumley*, 125 F. Supp. 2d at 559 (citing *Cleveland*, 38 F.3d at 297).

7

And an employee need not sue the union in order to proceed against his employer on such a claim. *Id.* (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165 (1983)).

The record in this case is insufficient to support a finding of a breach of fiduciary duties owed by MSEA-SEIU to Galouch. Petitioner contends that she "notified her labor union, the Maine State Employees Association (MSEA-SEIU), that she would be filing this appeal *pro se* after they notified her that they would not." (Br. of Pet. 3.) However, nothing in the record indicates that MSEA-SEIU's decision not to proceed with a motion to vacate the Arbitration Award was "arbitrary, discriminatory or in bad faith." *Brown v. MSEA*, 1997 ME 24, ¶ 7, 690 A.2d 956; *Lundrigan v. MLRB*, 482 A.2d 834, 836 (Me. 1984). While the union may not disregard or set aside a grievance with merits, or unreasonably postpone filing a grievance, "a 'wide range of reasonableness must be allowed' and 'mere negligence, poor judgment or ineptitude are insufficient to establish a breach of the duty of fair representation.'" *Lundrigan* 482 A.2d 836 (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)); *see also Brown*, 1997 ME 24, ¶ 7, 690 A.2d 956.

A union's conduct is arbitrary if:

In light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational. A union's discriminatory conduct violates its duty of fair representation if it is invidious. Bad faith requires a showing of fraud, or deceitful or dishonest action.

*Aguinaga v. United Food & Commercial Workers Int'l Union*, 993 F.2d 1463, 1470 (10th Cir. 1993).

None of these elements of unfair representation are present here and for that reason, the Court concludes that MSEA-SEIU's decision not to pursue Galouch's theory of inadequacy of the Arbitration Award was an act of discretion, and fell sufficiently within the bounds of its duty

of fair representation. For the foregoing reasons, Galouch lacks standing to challenge the Arbitration Award either as a third-party beneficiary or on any other basis.

### *If Galouch Had Standing, Would She Be Able to Establish Grounds for Vacating the Arbitration Award?*

Even if Galouch had standing to pursue this motion to vacate the Arbitration Award, she would fail because she did not plead a cognizable legal basis to invalidate the Arbitrator's decision.[7] Galouch argues that the Arbitrator's Award should be vacated because she exceeded her power in fashioning the remedy so that Galouch would not be reinstated to her position with the State. She contends that having determined that Galouch was terminated without just cause, the Arbitrator was constrained to fashion a remedy consistent with the progressive discipline prescribed by the CBA. To find merit in Galouch's argument, this Court must conclude that the Arbitrator's decision bears no reasonable relationship to the CBA. *Maine State Emps. Ass'n*, 436 A.2d at 397. If there is any rational construction of the CBA that would support the Arbitration Award, the Award must be upheld. *Id.*

The CBA prohibits the State from suspending without pay, demoting, or dismissing its employees unless it first gives the employee a notice in writing of the disciplinary action to be taken. (Br. of Pet. Ex. 5 at 19.) It further requires the State to follow the principles of progressive discipline. (Br. of Pet. Ex. 5 at 19.) The Arbitrator concluded that the State failed to follow progressive discipline and for that reason found Galouch's termination to be without just cause.

---

[7] Pursuant to 14 M.R.S.A. § 5938(1), this Court may vacate an arbitrator's award on the basis of: corruption, fraud or other undue means; arbitrator's partiality; arbitrator's having exceeded his powers; arbitrator's refusal to postpone the hearing or refusal to hear evidence material to the controversy.

But, because of her finding that Galouch had failed to perform her duties even adequately, the Arbitrator concluded that reinstatement would not be an appropriate remedy in this case. (Br. of Pet. Ex. 4 at 29.) Although this remedy seems to go beyond the four corners of the CBA, it was the parties' arbitration submission that empowered the Arbitrator to craft the remedy the way she did.

"Absent an express provision to the contrary, it must be assumed that the parties did not intend the arbitrator to go beyond the contract." *Am. Fed'n of State, Cnty., & Mun. Emps., Council 93 v. City of Portland*, 675 A.2d 100, 103 (Me. 1996) (citing *Westbrook Sch. Comm. v. Westbrook Teachers Ass'n,* 404 A.2d 204, 208-209 (Me.1979)). However, if the parties to arbitration purposefully invite the arbitrator to determine her own remedy, the reviewing court will be required to consider both the agreement and the arbitral submission. *Id.* (citing *E. Maine Med. Ctr., Inc. v. Maine State Nurses Ass'n*, 866 F. Supp. 607, 609 (D. Me. 1994)).

Here, the parties to arbitration, the State and MSEA-SEIU, submitted two issues to the Arbitrator: "Did the State have just cause to terminate the grievant, Patricia Galouch?" and "If not, what shall the remedy be?" (Br. of Pet. Ex. 4 at 1.) In other words, the State and MSEA-SEIU did not simply request that the Arbitrator determine whether, pursuant to the CBA, there was just cause for Galouch's termination, but they also explicitly expanded the Arbitrator's authority by asking her to craft a remedy she deemed appropriate. In light of this arbitral submission, the award was within the consensual delegation of arbitral authority. *Id.* (citing *High Concrete Structures, Inc. v. United Elec., Radio and Mach. Workers of Am., Local 166,* 879 F.2d 1215, 1218-19 (3d Cir.1989) (parties may agree to authorize an arbitrator to go beyond the terms of the agreement by submitting specific issues to arbitration); *Carpenters' Dist. Council v.*

10

*Anderson,* 619 F.2d 776, 778 (8th Cir.1980) (even if arbitrator exceeded his power pursuant to the agreement, the parties' submission gave him authority to order reinstatement and back pay)).

With the deferential scope of review in mind, the Court is compelled to conclude that the Arbitration Award was proper.

**The entry will be:**

**Patricia Galouch's Motion to Vacate the Arbitrator's Award dated November 13, 2012 is**

**DENIED.**

_____
12/10/13
**DATE**

_____
**SUPERIOR COURT JUSTICE**

| Date Filed | 1/9/13 | <u>Kennebec</u><br>County | Docket No. AP-13-01 | F |
|---|---|---|---|---|

Action: <u>Petition for Review</u>
      80C

## J. Murphy

| | | |
|---|---|---|
| Patricia Galouch | vs. | State of Maine, Department of Professional<br>& Financial Regulation, Bureau of Insurance |

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| ~~Patricia Galouch, Pro Se~~<br>~~91 Old Winthrop Road, #3~~<br>~~Augusta, ME 04330~~<br><br>Barbara Goodwin, Esq.<br>PO Box 1051<br>Augusta, ME 04332-1051 | Julie Armstrong, Esq,<br>79 State House Station<br>Augusta, ME 04333-0079 |

Date of Entry

| Date | Entry |
|---|---|
| 1/15/13 | Appellant's Petition Of Review Brief, filed 1/9/13. s/Galouch, Pro Se |
| 1/31/13 | Memorandum In Opposition To Petitioner's Motion To Vacate Arbitration Award, filed 1/30/13. s/Armstrong, Esq. |
| 2/12/13 | Reply to Memorandum Opposition to Petitioner's Motion to Vacate Arbitration Award, filed. s/Galouch, Pro Se |
| 2/13/13 | Revised signed Certificate of Service, filed.s/Patricia Galouch, Pro Se |
| 3/12/13 | Oral argument scheduled for 4/4/13<br>List mailed to Petitioner and Atty Armstrong |
| 3/28/13 | Motion to Continue, filed. s/Galouch, Pro Se |
| 4/1/13 | ORDER, Murphy, J.<br>Motion to Continue is Granted.<br>Copy to Petitioner and Atty Armstrong |
| 5/24/13 | Oral argument scheduled for 7/15/13 at 9:30 a.m.<br>Copy of motion list and hearing notice mailed to Petitioner and Atty Armstrong. |
| 7/17/13 | Oral argument was not held on 7/15/13. Rescheduled to 8/2/13 at 8:15.<br>Notice of Hearing mailed to Attys Goodwin and Armstrong. |
| 8/2/13 | Oral argument held. J. Murphy presiding.<br>Barbara Goodwin, Esq. for Petitioner, Julie Armstrong, Esq. for Respondent.<br>Tape 1740, Index 50-650<br>Under advisement. |

12/10/13      ORDER ON MOTION TO VACATE ARBITRATION AWARD, Murphy, J.
Patricia Galouch's Motion to Vacate the Arbitrator's Award dated November 13, 2012
is DENIED.
Copy to Attys Goodwin and Armstrong.
Copy to repositories.