JABAR, J.,
dissenting.
[¶26] I respectfully dissent because a rational inference from the relevant language of the Collective Bargaining Agreement (CBA) and the emails in question supports the arbitrator’s decision.
[¶27] It is well settled that in Maine, the Court’s review of an arbitration award is a *1245 narrow one, and that we will uphold an award if “any rational construction of the [a]greement could support [it],” City of Lewiston v. Lewiston Firefighters Ass’n, IAF, Local No. 785, 629 A.2d 50, 52 (Me.1993) (citations omitted) (emphasis added). Further, in determining if an arbitrator exceeded her authority in rendering a decision, we will “construe the underlying contract broadly, resolving all. doubt in favor of finding that the arbitrator acted within [her] power.” Union River Valley Teachers Ass’n v. Lamoine Sch. Comm., 2000 ME 57, ¶ 5, 748 A.2d 990. As such, the Court will only vacate an award if the Superior Court itself was compelled to do so. AFSCME, Council 93 v. City of Portland, 675 A.2d 100, 102 (Me.1996) (emphasis added).
[¶28] The issue before us centers upon the language contained within two emails between the parties, interpreted in light of the CBA governing the contested arbitration proceedings. On August 13, 2013, a Maine State Employees Association (MSEA) representative contacted the Chief Negotiator for the State’s Office of Employee Relations seeking a waiver of deadlines for certain cases then pending in the grievance process. In his email, he explained that:
Due to deaths in the family and sick leaves, both of our Member Support Specialists are out of work for at least the next two weeks. I am doing the best I can to stay on top of timelines, but as you know this is work they would typically administer. These absences began earlier this week with both of them being out the morning of Tuesday 8/27. I do not normally do this work and there is potential for me to make a mistake. I am doing the best I can and really don’t anticipate any mistakes, but I would appreciate if you could give us a break on the enforcement of timelines in the interim during the -time' when they are both out. I believe one will be returning by Sept. 12. I know we’ve done this in the past, so if that is acceptable please let me know.
(Emphasis added.) The Chief Negotiator agreed to the request, and replied:
Of course we will work with you/MSEA while the Member Support Specialists are out.- I, will notify everyone in this office and the Department HR directors that we are waiving time requirements form [sic] 8/27 through 9/13.
Let’s plan, to pick up the timelines on Monday 9/16. We can touch base later if this needs to change.
(Emphasis added.)
. ■ [¶29] An arbitrator could rationally conclude that, under the circumstances described by the MSEA representative, and based on the language of both the CBA and the emails in question, the State granted MSEA a waiver of the State’s enforcement of deadlines for the cases MSEA received between August 27, 2013, and September 13, 2013, and that the email exchange was not merely a request for an “enlargement” or a “tolling” of deadlines for those cases, .
[¶30] In holding that the email exchange in question constituted, an extension of timelines only, the Court.relies on the language of article 33, section 3.2 of the CBA providing that the parties may extend time limits if the arrangement is mutually agreed upon and reduced to writing. That same section, however, also provides that “[t]he parties may mutually agree to bypass steps of the grievance procedure.”[2] With regard to this section, the arbitrator *1246 noted in her interim decision that “[n]ot all collective bargaining agreements have language such as that in Section 3.2 permitting waivers of deadlines,” concluding that such language evidenced the parties’ intent to be accommodating in “fact specific circumstances and the desire to treat each other reasonably.”
[¶31] The language of the email exchange between the parties, in light of the terms of the CBA providing for flexibility in the grievance process, supports the arbitrator’s finding that the State granted MSEA a waiver of deadlines for the purposes of remedying problems arising out of the absence of key MSEA personnel. In his email, the MSEA representative conveys to the State’s Chief Negotiator his fear that the absence of staff responsible for docketing the grievances could adversely affect employees with pending cases. In response to his concerns, the State’s Chief Negotiator responded “[o]f course we will work with you/MSEA,” and informed him that “we are waiving the time requirements form [sic] 8/27 through 9/13.” (Emphasis added.) The State’s Chief Negotiator added further that they could “touch base later if this needs to change.”
[¶32] Although the Court concludes that the agreement between the State and the MSEA constituted an extension of deadlines, nowhere in the email exchange did either party mention the term “extension,” or “tolling.” Rather, the State granted MSEA a “waiver” of deadlines for the cases received during the timeframe in question. There is an important difference between the terms “waiver” and “extension.” While Merriam-Webster defines the word “extension” as “stretching out or stretching forth,” it defines “waiver” as the “act of -... intentionally ... abandoning a known right, claim or privilege.” Webster’s Third New International Dictionary of the English Language Unabridged (2002). As such, under the circumstances, it was reasonable for the arbitrator to conclude that the State chose to “intentionally abandon” the requirement that the cases in question be timely filed.
[¶33] Thus, given the circumstances relating to the string of absences, the terms of the CBA providing for the modification and bypass of grievance procedures, and the language of the emails in which the State purported to waive or grant MSEA a “break on the enforcement of deadlines” for the cases received during the time-frame at issue, the arbitrator acted rationally in concluding that Berube’s grievance was arbitrable.
[¶34] It may be true, however, that a rational interpretation of the CBA in light of the email exchange supports the conclusion that the operative effect of the emails was to extend the time limits, not waive them. But that is just one rational interpretation. It was also rational of the Arbitrator to interpret the emails to constitute a waiver by the State of time limits for the cases in question so as to combat problems arising from the absence of key MSEA employees. It is not up to us to impose our judgment as to what the best interpretation is. Instead, our review is limited to determining whether the arbitrator’s award was based on any rational interpretation of the agreement. If we find that it was — as I believe is the case here — then we must conclude that the arbitrator acted within her power when she found the case to be arbitrable, and thus we should have addressed the merits of the case.[3]

. The full text of article 33, section 3.2 is as follows: "All of the time limits contained in this Article may be extended by mutual agreement of the parties and such extensions shall, in order to be effective, be confirmed in writing. The parties may mutually agree to bypass steps of the grievance procedure.”

. Because my colleagues did not get past the issue of arbitrability, I will not address the merits of the other issues raised by the State on appeal.