STATE OF MAINE                                  BUSINESS AND CONSUMER COURT
                                                BCD-CV-15-62 (cons. w/ BCD-CV-16-26)

RICHARD D. ROCKWELL,
         Plaintiff / Counterclaim Defendant
v.

3CROW, LLC and Joshua Hixson,
         Defendants / Counterclaim Plaintiffs

---

3CROW, LLC,
         Third-Party Plaintiff
v.

449 MAIN STREET, LLC
         Third-Party Defendant

---

449 MAIN STREET, LLC                            **ORDER ON MOTION TO**
         Counterclaim Plaintiff                 **VACATE ARBITRATION**
v.                                              **AWARDS**

3CROW, LLC,
         Counterclaim Defendant

---

449 MAIN ST, LLC,
         Cross-Claim Plaintiff,
v.
JOSHUA HIXSON,
         Cross-Claim Defendant

---

(BCD-CV-16-26)
3CROW, LLC,
         Plaintiff
v.

RICHARD D. ROCKWELL and
449 MAIN STREET, LLC
         Defendant

1

## Background

Before the Court is a Motion to Vacate Arbitration Awards pursuant to 14 M.R.S.A. §5938. On June 10, 2016 the above-captioned cases were mediated by Attorney Jerrol Crouter. The parties believed they reached a settlement which was reduced to a Term Sheet. Pursuant to the Term Sheet, the parties agreed in paragraph 12 to "exchange mutual releases of all claims that exist as of the date of the release." In addition, they agreed in paragraph 13 of the Term Sheet that "any disputes as to the language of this Term Sheet or the final settlement documents will be submitted to arbitration with Jerrol Crouter, Esq." Two arbitration decisions were issued by Attorney Crouter on December 19, 2016 and December 28, 2016. Plaintiffs Rockwell and 449 Main St., LLC ask the court to find that the two decisions exceeded the scope of the authority of the arbitrator "because they arbitrarily preclude the parties from pursuing certain post-settlement claims, including claims for breach of the settlement itself, and allow the parties to pursue other specified post-settlement claims." (Plaintiffs' Motion to Vacate, pg. 2).

Richard D. Rockwell and 449 Main Street, LLC are represented by Attorney Lee Bals. 3Crow, LLC is represented by Attorney Michael Hodgins. Joshua Hixson is represented by Attorney Patrick Mellor. Oral argument on the motion was conducted on May 10, 2017. The Court has reviewed the parties' written filings, has considered the oral arguments made, and issues the following Order denying the Motion.

2

## Standard of Review

It is well settled that a settlement agreement is enforceable as a contract even if it contemplates execution of further documents, including a release. *White v. Fleet Bank of Maine*, 2005 ME 72, ¶¶11-12.

It is also well-settled that Maine law favors arbitration. *Barrett v. McDonald Invs., Incl*, 2005 ME 43, ¶16. A contract for arbitration is interpreted consistently with general contract principles. The arbitrator's contract interpretation is part of what is bargained for when parties contractually agree to arbitrate a dispute. *City of Lewiston v. Lewiston Firefighters Ass'n, IAG, Local #785*, 629 A.2d 50, 52-53. If the arbitrator's construction is rational, a court is required to uphold the arbitrator's interpretation. *Westbrook v. Teamsters Local No. 48*, 578 A.2d 716, 717 (Me. 1990).

The Superior Court's role in supervising, or reviewing an arbitration decision is limited by statute. The Court may determine substantive arbitrability, namely whether the parties intended to submit a particular dispute to arbitration, and it may determine whether an arbitrator exceeded his or her powers. 14 M.R.S 5928, 5938(1)(E), 5938(1)(C).

The Superior Court is empowered to vacate an arbitration award if an arbitrator exceeds his or her powers. 14 M.R.S. §5938(1)(C). A party who claims that the arbitrator has exceeded his or her power has the burden of proof when moving to vacate an award of arbitration. *City of Lewiston*, 629 A.2d at 53. An error of law or of fact by the arbitrator is not enough to establish that an arbitrator exceeded his or her authority. However, a party may seek judicial relief from an arbitration award if upon consideration of the way the arbitrator decided the merits of the case, it is proven that the arbitrator

3

acted "arbitrarily or capriciously" in deciding the merits. *Westbrook School Committee v. Westbrook Teachers Association,* 404 A.2d 204, 208 (Me. 1979).

## Findings and Conclusions

In its opposition to the motion, 3Crow, LLC states that the parties,[1] had come to an agreement after submitting "all claims, counterclaims and crossclaims alleged in the matter bearing Docket No. CV-15-062, and all claims pending from the Rockland District Court FED matter, which at that time was on appeal to the Law Court, to mediation with Attorney Jerrol Crouter on June 10, 2016." (Opposition, pg. 1). At oral argument it was clear to the Court that this statement accurately reflects the litigation covered by the settlement, and also that the parties mutually assented to be bound by the terms of the agreement reached. A redacted Term Sheet is attached as Exhibit 1 to the Opposition.

Paragraph 12 of the Term Sheet required the parties to "exchange mutual releases of all claims that exist as of the date of the release...." The parties agree that there was a significant delay in completion of the releases, and that certain events unfolded which complicated the agreement reached on June 10. Just over a month after the successful mediation, there was an "unforeseen intervening water leak in a dishwasher on the restaurant caused water damage to the premises", namely property owned by Mr. Rockwell which 3Crow and Mr. Hixson leased to run the restaurant. (Exhibit 2 to Opposition, *Arbitrator's Decision on Terms and Scope of the Release,* dated 12/19/16, pg. 2) In addition, there was what Attorney Crouter called "the unlikely early termination

---

[1] Joshua Hixson did not file any opposition to the motion but the Court understands that Attorney Hodgins is representing his interests in this motion.

4

of the tenancy by 3Crow" before the agreed-upon termination date of February 28, 2017.[2] *Id.* pg. 2.

While 3 Crow and Mr. Hixson blame Plaintiffs for the delay in finalizing the releases, that claim was rejected by Attorney Crouter. The Court finds that the reasons for the delay are not material to what has to be decided here. The Term Sheet clearly establishes that the parties intended to provide a mechanism to resolve any post-settlement issues regarding the releases which were in fact "the settlement documents" contemplated in the June 10, 2016 agreement. Paragraph 13 of the Term Sheet states that "any disputes as to the language of this Term Sheet or the final settlement documents will be submitted to arbitration with Jerrol Crouter, Esq." The issue is whether Attorney Crouter exceeded his authority in the way he decided the merits of the dispute or disputes submitted to him.

Exhibit 4 of the Term Sheet is a September 6, 2016 email from Attorney Bals to Attorney Crouter which states, "We are having issues with respect to interpretation of the settlement..." Exhibit 5 is another email from Attorney Bals to Attorney Crouter informing him that the parties still had a dispute "as to the language of the Term Sheet and pursuant to Paragraph 13. By way of background, the parties have agreed that there will be no 'final settlement agreement' and that the Term Sheet will serve as the effective settlement agreement. The dispute concerns the effective date of the release provided for in the settlement." *Id.*

Exhibit 6 is a December 6, 2016 letter from Attorney Bals which lays out his clients' position as to the issue that the parties were submitted to Attorney Crouter for

---

[2] It is undisputed that 3Crow, LLC vacated the premises early and terminated the lease on November 1, 2016.

5

arbitration. On the second page of the letter it states: "It is Main Street's position that the releases that are to be exchanged should be dated as of June 10, 2016 and should release any claims existing on or before that date which is the date of the mediation and the date that the settlement was reached. Counsel for 3Crow LLC has taken the position that the releases should be effective as of the date they are signed." (Exh. 6, pg. 2).

The effective date of the releases was therefore submitted for decision to Attorney Crouter. As Attorney Bals pointed out in the December 6 letter, his clients were in fact asserting claims that arose after the June 10 mediation, including breach of the agreement,[3] rent due, and damages resulting from the water leak which occurred on July 21 or 22 of 2016.

An arbitration hearing was conducted on December 8, 2016 at Attorney Crouter's office. Attorney Bals was present. Attorney Hodgins. Attorney Mellor, and the parties participated telephonically. The evidence is clear that the parties were not challenging whether the June 10 mediation resulted in a binding agreement. Rather, they were seeking a decision from the arbitrator of what would be the effective date of the releases which had yet to be signed[4] as contemplated by the June agreement. Importantly, it is also clear that at no time prior to the arbitration hearing did any party object to the authority of Attorney Crouter to decide what the effective date of the releases would be.

Attorney Crouter issued his first arbitration decision on December 19, 2016 and the second on December 28, 2016. In the first, which is captioned as "Arbitrator's Decision on Terms and Scope of Release" Attorney Crouter made certain findings after the hearing. He determined that the purpose of the release language in the Term Sheet

---

[3] While it is not entirely from the parties' arguments, the Court believes that the breach alleged then pertains to an allegation that 3Crow violated a confidentiality provision agreed to in the June 10, 2016 settlement agreement.

[4] As of this date, no releases have been signed by the parties as contemplated by the June 2016 agreement.

6

was "to put an absolute end to the litigation between the parties upon the signing of the release, to the extent possible…" In addition, he found that there was no undue delay caused by Plaintiffs' counsel in the release-drafting process, and he noted that certain "unforeseen" events had occurred after the mediation that supported making exception for certain identified claims which arose from those events. He specifically identified those claims as follows: claims that arose as a result of the "dishwater leak"; claims for unpaid rent arising from 3Crow's decision to terminate the lease on November 1, 2016; and claims by 3Crow that the Plaintiffs had violated a confidentiality provision in the June 10, 2016 agreement.

The second decision is entitled "Arbitrator's Clarified Decision on Terms and Scope of the Release" and it is almost identical to the first decision. However, beginning with the first full paragraph on page 3 of the decision, Attorney Crouter clarifies that after the first decision was issued, "counsel and I had a telephonic conference in which questions were raised concerning the meaning of certain aspects of my decision. One issue I had not contemplated was the question whether a party could assert a released claim as an affirmative defense in any action arising out of the water leak, or out of 3Crow's termination of the lease on November 1." Notably, there again is no suggestion that after issuance of the first decision either party was questioning Attorney Crouter's authority to resolve these newly articulated issues, or to identify which claims would be released and which would not be. On December 28, 2016 Attorney Crouter clarified as follows: "With the exception of (i) claims or defenses either party may have arising directly out of the dishwasher leak occurring on or about July 21 or 22, 2016; (ii) 449 Main Street LLC's claims for unpaid rent arising directly out of the decision by 3Crow to

7

terminate the lease on November 1, 2016; and (iii) any claims or defenses 3Crow LLC may have arising out of alleged violations by 449 Main Street, LLC of the confidentiality clause (paragraph 7) in the June 10, 2016 Term Sheet, any and all other claims, damages.....are hereby released."

As the Court understands Plaintiffs' argument, Attorney Crouter may have had authority to interpret the Term Sheet by selecting an effective date for the still-unsigned releases, but he was restricted to two choices: either claims that existed as of the date of the mediation, or claims that existed on the date the releases might actually be signed. That, at least, was the way the issue was framed in his letter to Attorney Crouter. One obvious problem with this approach is that it left open the possibility, if Attorney Crouter selected the latter option, that the parties would never be able to agree to final language for the release and the settlement would continue to drift. That would also obviously make it difficult for either side to enforce the agreement.

Plaintiffs also argue that Attorney Crouter had no authority to "carve out" specific claims or causes of action from the categories of claims that would be released by the June agreement and emphasize that he had no authority in any event to prevent either from trying to enforce any aspect of the settlement agreement. The problem confronting Attorney Crouter was to try and reconcile what the parties agreed was their overriding intent – to end the litigation – with the reality that the delay in executing the releases resulted in events unfolding that neither party could have predicted at the time of the mediation. Neither party is arguing that there was no binding agreement entered into on June 10, 2016, nor could they do so credibly. They both consistently refer to what happened at mediation as an "agreement" or a "settlement." Attorney Crouter, when

8

faced with the two choices posited by Attorney Bals in his letter of December 6, 2016, did not select either option. The fact that he chose a different way to resolve the dispute about the effective date does not, however, make that decision arbitrary or capricious.

In sum, Plaintiffs have failed to articulate why the arbitrator was limited to one of two choices, particularly when both parties agreed to give broad authority to the aribitrator in their June 10, 2016 agreement: "…any disputes as to the language of this term sheet or the final settlement documents." Par. 13, Exh. 1. Instead, the arbitrator decided to cut off claims and defenses as of the date of his second decision with "carve outs" that he deemed to be fair to both parties, based on events that no party could have foreseen on June 10, 2016. It should be noted that the "carve outs" were claims and defenses that had been specifically identified by the parties. The decisions also hold the parties to their agreement to release - at the very least - all claims that may have existed as of the date of mediation. It is also significant that Attorney Crouter effectively provided the final "release" contemplated by the parties June 10, 2016, something the parties had been unable to do for months.

These decisions were not "arbitrary or capricious." They were issued after a fair process, which neither party faults. The parties contracted in June of 2010 for a mechanism to resolve disputes about the language of the settlement documents, and one which conveyed broad authority to the arbitrator. All parties submitted the issues to the arbitrator, all parties participated in the proceedings, and did so without objection.

9

The entry will be: Plaintiffs' Motion to Vacate Arbitration Awards is DENIED. Pursuant to 14 M.R.S. §5938(4) the Arbitration Decisions of Attorney Jerrol Crouter dated December 19, 2016 and December 28, 2016 are hereby CONFIRMED.

_____
**DATE**

_____
**SUPERIOR COURT JUSTICE**

Entered on the Docket: 5/23/17
Copies sent via Mail___ Electronically ✓

10